## Coleman & Nelson v. Fred. S. Lord.

### No. 2498.

**Lease of School Lands — A Bid not a Contract.**—The Land Board under Act of April 12, 1883, had power to provide rules reserving the right to reject bids in order to secure fair competition; and although the board did not have the power to alter the law fixing a minimum price, yet where a bid had been made for the rent of school lands and it was rejected by the board such bid did not create a lease and the bidder could not recover the land from a subsequent lessee under the board.

Appeal from Donley. Tried below before Hon. Frank Willis.

The following agreement was made for the purpose of advancing this cause in the Supreme Court, which fully states the case:

"It is agreed that the only issues to be considered by the court in this case are questions of law, viz.:

"First. Did the Act of April 12, 1883, to provide for the classification, sale, and lease of the lands set apart for the benefit of the common school fund, etc., authorize the State Land Board to increase the minimum price for the lease of lands above four cents per acre per annum as fixed by said act. See Gen. Laws Reg. Ses. 18th Leg., pp. 85–89.

"Second. If said act did authorize the State Land Board to increase the minimum price fixed therein, was the act granting such authority constitutional?

"Third. Did appellants without further action by the Land Board, they having made application in due form, become entitled to possession of the lands sued for when the same were knocked off and awarded to them by the county surveyor at public outcry in the manner prescribed by the Land Board?

"Fourth. If appellants did not become entitled to possession when the lands were knocked off and awarded to them by the surveyor, then could they, having entered upon the same, lawfully withhold the lands from appellee, appellants having at the time their applications were presented to and rejected by the Land Board made tender to the proper officer of the sum bid for the lease of said lands?"

*Walton, Hill & Walton*, for appellants.—We submit the following general propositions for the consideration of the court:

All laws must be uniform and equal in the locality wherever intended to operate, whether rights be taken away from individuals for the common good or benefits and reliefs be bestowed on them.

A statute empowering action by a body created by the law itself to execute such law is a power of attorney to and the measure of authority to such created body.

The intention of the Legislature in the enactment of a statute is the soul of the statute and must govern the execution of it.

The Legislature has no constitutional authority to delegate power to any department of government, association of men, statutory body, or even to the people at large in their sovereign capacity to make laws or to change, modify, or abrogate the law from what it was when it came into existence as a law.

While departments, etc., may make regulations when authorized by the law making power so to do, to more perfectly execute a named law, or to supply machinery possibly omitted in the law, yet the regulation is subordinate to the law, and can not, under the guise of regulations, change the body of the law in letter or spirit.

A first statutory law on a new subject matter is mandatory in character.

The foregoing are self-evident propositions, a serious dispute of which will not be hazarded by any well informed lawyer.

Do the questions of law that spring from the facts of this case come under the protection of any of said propositions?

The particular words of section 16, which are under debate, are these: "Pasture lands or agricultural lands not timbered may be leased in suitable quantities for stock and ranch purposes for not less than four cents per acre per annum and for periods not exceeding ten years by such agents and under such regulations as the board may prescribe. The regulations shall provide for competition. Leases shall be made in the localities where the land is situated."   *   *   *   *   *   *   *

The regulations adopted by the board as a substitute for the foregoing words of the law are these:

"OFFICE OF THE STATE LAND BOARD,
"AUSTIN, TEXAS, Feb. 27, 1884.
"Resolution No. 8.

"Resolved by the State Land Board, That no lands belonging to the common school, university, and asylum funds shall hereafter be leased for periods longer than six years, and that the minimum prices shall be eight cents per acre per annum for dry lands and twenty cents per acre per annum for watered lands, and that this board reserves the right to refuse to consummate any lease of watered lands for any reasons which they may deem good and sufficient."

*   *   *   *   *   *   *   *   *   *   *   *   *

A first statutory law on a new subject matter is mandatory in character.

1. Why so?

2. Because with reference to the subject matter before the statute there was no law. There was an absence of law but no law.

3. In all subject matter to which directory statutes are applied there is a legal way to do the thing directed to be done; even if the statute had not been enacted. When the direction of the statute is evaded, disregarded, or neglected, and the thing is done under and according to some

other law applicable to the very thing or kindred thing, then the objective point is reached, the thing is done.

4.   But where the subject matter is virgin as in this case, never having been embraced by the law, there is no evading of the law as written, for there is no other law or custom to fall back on.   It is the law as written or it is nothing.   It is the whole law, in parts and in entirety, or the subject matter is not governed or regulated by law.

We submit for consideration the following authorities, although familiar to the court, as throwing some light on this interesting question so feebly and crudely remarked on by us:   Bishop on the Written Law, book II, chs. 9, 15, and 16.   The chapters are short.   Same book, pp. 89, 90, 93, 95, 119, 190, 191, 192.   Cooley's Const. Lim., pp. 89, 90, 93, 145 to 150, 164, and note 4; also 480 to 498.   Lieber's Hermeneutics, 108 and 109; also ch. 5, particularly rules 3, 4, 9, 10, 12, 15, and 17 in recapitulation; Laws and Journals of the 18th Leg., both houses, particularly p. 141, Senate Journal, bottom first column and top of second.

*G. A. Brown* and *Brown & Gunter*, for appellants, cited Laws 18th Leg., p. 8; Bullard v. Bank, 18 Wall., 589; State v. Swisher, 17 Texas, 441; Willis v. Owen, 43 Texas, 41; Cooley on Const. Lim., 11; 1 Black. Comm., 147.

*W. O. Davis, Brown & Gunter,* and *G. A. Brown* filed written argument contesting the constitutionality of the powers granted the Land Board.

No brief for the appellee came to hands of the Reporter.

GAINES, ASSOCIATE JUSTICE. — There is no controversy about the facts of this case.   In April, 1884, the appellants presented to the Land Board a bid for the lease of the forty-eight sections of public school lands described in the petition, their bid being four cents per acre for the dry and five cents per acre for the watered sections, which was the lowest bid allowed by the Act of April 12, 1883, under which the lease was attempted to be secured.   It was admitted that the bid was previously filed in the proper time with the surveyor of the land district and that the proceedings taken under it were in all respects regular.   Prior to this time, however, the Land Board had passed a resolution fixing eight cents per acre for dry and twenty cents per acre for watered sections as the minimum price for the lease of the lands under the act.   They accordingly rejected appellants' bid for the reason that it was below the limit fixed by themselves.   The appellee subsequently filed with the surveyor a bid of eight and twenty cents per acre for the dry and watered sections respectively, which was duly presented to the board at one of its stated meetings for

this purpose. The latter offer was accepted, and the lands were there-upon leased to appellee. The appellants having taken possession of the premises, appellee brought this suit to recover possession and obtained a judgment.

The sole question presented in the briefs of counsel is whether or not the Land Board had authority under the law to raise the minimum named in the Act of April 12, 1883, for the lease of the university, asy-lum, and school lands. In Smissen v. The State, 71 Texas, 222, we de-cided that question in the negative. But the further question presents itself whether appellants have acquired such a right under their bid as will enable them to hold the land as lessees from the State. The regula-tions of the board made previous to appellants' bid reserved "the right to refuse to consummate" a lease "for any reason they might deem suffi-cient." The statute under which they were acting provided that "their regulations shall provide for competition" (Laws 18th Leg., p. 89, sec. 16), and we are of opinion that it was competent for the board to make a regulation reserving the right to reject bids in order to secure fair com-petition and thereby protect the rights of the State. To make a lease under this law there must be a contract with the board who are made the State's agents for this purpose.

Admitting that it was the duty of the board to accept the bid made in this case and to consummate the lease, can it be said that any contract has been concluded when they have rejected it? We think not. It re-quired the assent of both parties to complete the transaction, and the board having reserved the right to reject any bid and having rejected this we can not hold that any lease was effected. In the case of Leavy v. Pendergrass, 2 Beav., 415, trustees were empowered under an act of Parliament to let certain turnpike tolls by auction. In order to prevent fraud the act directed that they were to provide a minute glass and that immediately after each bidding it should be turned, and when it had run out it should be turned again, until it had run out three times, when if there were no intervening bids the last bidder should be the farmer or renter of the tolls.

It does not appear that the act provided any other regulations of the manner of conducting the auction. But the trustees announced that unless there were as many as three bids they reserved the right of rejection or of putting in a bid themselves. The plaintiff was the only bidder, and before the bidding was closed he was told that if there were not more bids they would be obliged to make a reserve bidding. This, how-ever, was not done, and the glass ran out the third time. The trustees leased to another, and upon suit brought against them and the lessee it was held there was no contract and that the plaintiff could not recover. There was no question made in the case as to the right to reject the bid,

and the principle upon which the case was decided seems to be that the right of rejection having been reserved and the bid having been in effect rejected the plaintiff acquired no right although he was the highest bidder under the special provisions of the act. In Blossom v. R. R. Co., 3 Wall., 196, the complainant was the highest bidder at two successive sales of the same property made by the marshal under a decree of court, and sought to have the latter confirmed, although after his bid the officer adjourned the sale to a later day; but the court held that he acquired no right by his bid and that the officer had the power to refuse to accept and to adjourn the sale.

In the transaction under consideration in the present case the Land Board were the agents of the State to lease the land at auction, and in our opinion the State could only be bound by their acceptance of a bid. They may have misconceived their duty in rejecting the bid, yet the fact remains that they did reject and no contract was made. If an individual had appointed an agent to lease a tract of land and had given positive instructions to let the premises at auction, provided they brought a minimum price and the agent had notified the bidders that he reserved the right to reject any bid and that he would accept no bid which was not for a greater sum than that fixed by his principal, and if a bidder had bid a less sum than that named by the agent and the latter had declined the bid, could it be seriously contended that this consummated a lease? The principle in the case supposed and in that before us seems to be the same. The agents in both cases have not obeyed instructions—have not performed their duty—but they have made no contract and their principals are not bound.

This is not like the case of acquiring land by the location of certificates or under the pre-emption and homestead acts. There the law provides that upon certain conditions being complied with the party seeking the benefits of the law acquires a right either absolute or conditional to the land. Here the statute appoints a board to act as agents of the State in leasing certain of its lands, and prescribes in a general way the manner in which the lease shall be made. Until the board acts, and until it gives its final assent to a contract of lease, no one can claim to be the lessee of the State under the act. Whether the board can be proceeded against by mandamus, and if so whether they could have been compelled to make a lease in this case, are questions we are not called upon to determine.

In Campbell v. Blanchford, 5 Texas Law Rev., 69, and in State v. West, 63 Texas, 148, it was held that an application to the surveyor to buy land under the Act of 1879 and the payment of his fees did not invest the applicant with a right which could not be taken away by a repeal of the law under which the application to purchase was made.

We are of the opinion that the judgment of the court below is the only proper judgment that could have been rendered in the case, and it is therefore affirmed.

*Affirmed.*

Opinion December 14, 1888.

Motion for rehearing was argued and overruled.