Adopted December 9, 1890.

---

## JUMBO CATTLE COMPANY v. BACON & GRAVES.

### No. 7231.

1.  **File as an Appropriation of Public Land.** — A file was made by virtue of 240 alternate railroad land certificates.    The file included more land than could be included within surveys legally made under the certificates.    Surveys were made of the entire territory.    Prior to the application of certificates to the excess over the 480 sections covered by the certificates filed the land was reserved from location by virtue of the Act of May 2, 1873, creating and defining a reservation for the benefit of the Texas & Pacific Railway Company.    *Held*, that upon the survey under the 240 certificates of the land, the residue of the land described in the file stood as if it had never been made, and gave the maker of the file no right to apply other certificates after the land had been withdrawn from location.'

2.  **Application to Purchase Public Land.** — Under the Acts of July 14, 1879, and March 11, 1881, it was not necessary to the validity of an offer to purchase under the said acts a number of sections of 640 acres in a body that the land sought to be appropriated should be described section by section.

3.  **Repeal of Law Pending Application Under It.** — The Act of January 22, 1883, repealing the fifty-cents acts of 1879 and 1881, pending an application made in accordance with the law and followed by a survey, would not affect the rights of such purchaser to go on with his purchase and acquire the land under the repealed laws.

4.  **Refusal of the Purchase Money.** — The State Treasurer by refusing to receive the purchase money could not affect the right of the purchaser to acquire the land by a compliance with the laws.

5.  **Contract with State.** — In so far as mere property rights are concerned, we see no difference between the contract of a State and an individual and a contract between two individuals.    When there is an offer made by an act of the Legislature which is accepted by an individual there is a contract which it is not within the power of the State to impair.

6.  **Repeal of Law as Affecting Contracts.** — After the acceptance of an offer

made by a statute the repeal can not affect the contract.    But before acceptance the repeal withdraws the offer and no contract can be made.

**7.  Case Adhered to.**—White v. Martin, 66 Texas, 340, adhered to.

APPEAL from Scurry.    Tried below before Hon. William Kennedy.
The opinion contains a statement.

*A. C. Wilmeth* and *T. D. Cobbs,* for appellant.— 1.  Appellees' application to the surveyor of the Palo Pinto Land District, made December 1, 1882, filing on the lands in controversy, the survey of that officer on the 19th and 20th days of January, 1883, of all of said lands, the return of the field notes to the General Land Office thereafter, and the tender by appellees of the purchase money to the State Treasurer on May 19, 1883, vested no title or claim, either legal or equitable, in appellees to the land in controversy.    Laws 1879, spec. sess., p. 48; Laws 1881, p. 24; Laws 1883, pp. 2, 4; The State v. Work, 63 Texas, 148; White v. Martin, 66 Texas, 341; Coleman v. Lord, 72 Texas, 292; Yosemite Valley case, 15 Wall., 77; Frisbie v. Whitney, 9 Wall., 187; Campbell v. Wade, 10 Sup. Ct. Rep., 9.

2.    The claim of appellees, if anything, is a mere equity, and maturing May 19, 1883, was barred and a stale demand at the institution of this suit, March 11, 1889.    Montgomery v. Noyes, 73 Texas, 204; McKin v. Williams, 48 Texas, 89; Carlisle v. Hart, 27 Texas, 350.

3.    Under its plea of not guilty appellant was entitled to whatever benefit may result from the statements of the equitable claim on which appellees' cause of action was based.    Mayes v. Manning, 73 Texas, 46; Montgomery v. Noyes, 73 Texas, 203.

4.    The landlord of appellant, the Houston & Texas Central Railway Company, by virtue of its location, file, and survey of the lands in controversy long prior to the application, file, and survey of appellees, had appropriated said lands, so that at the time of appellees' application they were not subject to purchase under the acts of July 14, 1879, and March 11, 1881; and by its location, file, and survey and returning field notes to the General Land Office in time, the said railway company, for itself and for the school fund of the State, acquired a vested right in the lands superior to the claims of appellees.    Const. 1876, art. 14, sec. 2; Rev. Stats., art. 3271; Pasch. Dig., arts. 7088, 7089; Adams v. Railway, 70 Texas, 252; *et seq.*

*Hancock, Shelley & Hancock,* for appellees.— 1.  Under the act providing for the sale of unappropriated public lands, the party desiring to purchase, his first act was by application to the surveyor of the proper district to survey the land into tracts of 640 acres.    The surveyor passed upon the responsibility of the applicant.    If the application was accepted and the survey made, an executory contract existed by which the purchaser

acquired a vested right in the land so surveyed for him which can not be divested or impaired by subsequent legislation.  White v. Martin, 66 Texas, 340;  The State v. Work, 63 Texas, 148.

2.   Appellees' right to acquire the lands in controversy so applied for and surveyed by purchase was complete and vested under the terms of the statute and by virtue of the executory contract, which could be lost to them or forfeited only by a failure on their part to comply with the further requirements of the statute to make payment therefor within the time prescribed by law.   The Act of January 22, 1883, withdrawing said lands from sale did not and could not affect the vested right of appellees in said land thus acquired.   White v. Martin, 66 Texas, 340;  Railway v. Railway, 70 Texas, 649;  Day Cattle Co. v. The State, 68 Texas, 540;  Gammage v. Powell, 61 Texas, 629;  The State v. Work, 63 Texas, 148;  Cox v. Railway, 68 Texas, 228.

3.   We submit the refusal of the Treasurer to receive the purchase money can not affect the rights of the purchasers, for in effect that would be clothing that official with power and authority superior to the Legislature. His functions under the laws in question are purely ministerial, and if he refuses to receive the money when tendered such tender for all legal purposes operates as payment.   7 Wait's Act. and Def., 577, and authorities.

4.   Appellees tendered the price for the land in controversy to the Treasurer of the State, and the same having been refused by said Treasurer, they were remediless, there being no provision under which they could enforce their rights by suit either against the State or against the Treasurer to compel him to receive the purchase money for the land; the first opportunity for redress of the wrong being by suit against parties who had gone into adverse possession of the land itself, who upon being sued answered by general denial and plea of not guilty.

5.   The surveys claimed by the Houston & Texas Central Railway Company and covering the land in controversy in this suit were void; first, because made by a surveyor not authorized to make the same, because the same were not within the limits of his district; second, because made within the eighty-mile Texas & Pacific reservation.   Said surveys were void because not made by virtue of certificates filed with the surveyor before the creation of said reservation.   Kimmell v. Wheeler, 22 Texas, 77; Sherwood v. Fleming, 25 Texas Supp., 408;  Woods v. Durrett, 28 Texas, 429;  Wright v. Hawkins, 28 Texas, 472;  Milam County v. Bateman, 54 Texas, 154.

GAINES, ASSOCIATE JUSTICE.—This case is submitted under the following agreement, made in pursuance of Rule 59 of this court:

"1.   Appellees brought this suit against the appellant company on the 11th day of March, 1889, alleging that the defendant was a corporation, duly incorporated under the laws of the State of Texas, having its principal

office in the county of Mitchell in said State, and John T. Beal as its president.

" That appellees were the legal and equitable owners of 17,280 acres of land situated in Scurry County, Texas, and divided into twenty-seven surveys of 640 acres each, and described by number, block, and name of original grantee. The defendants below (appellants) answered by general demurrer and plea of not guilty. Trial by the court without a jury. Judgment for plaintiffs (appellees) for all the land described in their petition lying and being situated within the Texas & Pacific reservation, and judgment for $2050 rents, and that as to such of the lands claimed by plaintiffs as were situated without the limits of said reservation the plaintiffs take nothing, and plainly describing the lands recovered by plaintiffs by metes and bounds in said judgment, and awarding to plaintiffs the writ of restitution therefor.

" The following are the facts:

" 1.    That in December, 1882, Scurry County was an unorganized county, and was a part of the Palo Pinto Land District.   On December 1, 1882, E. M. Bacon and E. G. Graves made application to purchase the land in controversy under what is known as the fifty-cent act, approved July 14, 1879, and the act amendatory thereof, approved March 11, 1881.

" The application of appellees for the purchase of the land in controversy was made December 1, 1882, and addressed to the surveyor of Palo Pinto Land District, and was received and recorded by him in accordance with law on that date.   Said application was in proper form, and applied for the land in controversy in one body, to be surveyed in 640 acre tracts.

" 2.    On January 19 and 20, 1883, the said surveyor of Palo Pinto Land District surveyed the lands in controversy, which are within the limits designated in said application, into tracts of 640 acres each, and recorded the field notes of said surveys in his office, and returned and filed the same in the General Land Office, with his certificate and map of said surveys, within the time prescribed by said act of July 14, 1879.

" 3.    That plaintiffs paid the surveyor's fees and fees for filing field notes in the General Land Office within the time required by law.

" 4.    On the 19th of May, 1883, plaintiffs (appellees) produced to the Treasurer of the State of Texas evidence that they had filed the field notes in the General Land Office and paid the fees on the said lands under the Act of July 14, 1879, and the act amendatory thereof, approved March 11, 1881, and thereupon tendered to the said Treasurer the amount of the purchase price of said lands at the rate of fifty cents per acre, which was then and there refused by said Treasurer.

" 5.    Plaintiffs (appellees) have always been ready, able, and willing to pay for said land at the price fixed by law, and have often tried to induce the State Treasurer to accept said payment, which he has as often refused to accept.

"6. In December, 1872, the Houston & Texas Central Railway Company made application to the surveyor of Jack County for the survey of 240 alternate certificates. On May 10, 1873, said Houston & Texas Central Railway Company made application for a survey of 200 alternate certificates. Each of said certificates was for 640 acres to the company and 640 acres to the State.

"7. The application of said Central Railway Company covered the lands in controversy, and also included more than was sufficient to satisfy said 240 alternate certificates, to-wit, about 900 sections of land. But the 480 surveys made by virtue of said 240 certificates named in said two files do not embrace any of the lands in controversy.

"8. In July, 1873, said Central Railway Company caused 480 surveys of the land covered by its two files to be surveyed by virtue of its said 240 certificates by the Jack County surveyor, and caused said surveys, field notes, and certificates to be returned to and filed and mapped in the General Land Office of the State of Texas within the time required by law, where they still remain. After surveying said 480 surveys for said 240 certificates, said Houston & Texas Central Railway Company, without any additional file, caused the lands in controversy to be surveyed by said Jack County surveyor by virtue of other and different certificates than the 240 named in said two files above mentioned.

"9. Said survey being made in July, 1873, and the surveys numbered as described in plaintiff's petition. None of the land has ever been patented by the State. Defendant (appellant) is the lessee of the Houston & Texas Central Railway Company as to the odd numbered surveys, and is the lessee of the State under the school land law of the even numbers. Defendant has had the exclusive use and has occupied the land in controversy for two years next before the filing of the original petition in this case. Said land is worth the annual rental of seven cents per acre per annum. The land in controversy is within the eighty-mile Texas & Pacific reserve. The 480 surveys of 640 acres each surveyed by virtue of the 240 certificates filed by the Houston & Texas Central Railway Company, were surveyed and lie outside of and north of the eighty-mile reserve, and do not conflict with the land in controversy.

"10. The plaintiffs read in rebuttal an act of the Legislature entitled 'An act to adjust and define the rights of the Texas & Pacific Railway Company within the State of Texas, in order to encourage the speedy construction of a railway through the State to the Pacific Ocean.'

"'Sec. 6. That the said Memphis & El Paso reservation from the twenty-third meridian of longitude west from Washington to the Rio Grande, as designated by the field notes, maps, and reports from the different surveyors of the several land districts of the State on file in the General Land Office, is hereby continued to be set aside and reserved from pre-emption, location, and survey for the benefit of the said Texas & Pa-

cific Railway Company and the school fund, and there is also set aside for the same purpose out of the public lands such additional width of territory on each side of the said sixteen miles in width from the twenty-third meridian of longitude west to the east boundary line of New Mexico; that is to say, take the center line of said Memphis & El Paso reserve and extending forty miles on either side thereof.'

"The appellant holds possession as lessee of the Houston & Texas Central Railroad Company of the odd sections and of the State to the even sections.

"Issues joined and to be determined:

"1.  Appellant affirms that the judgment of the District Court is erroneous, because the application by the appellees to purchase the land sought to be recovered by them was not sufficient or as required by the statute.

"Appellees deny this, and affirm that their application was in strict conformity to the statute, and in so far entitled them to the land claimed.

"2.  Appellant affirms that the tender of payment of the purchase money for the land to the State Treasurer was not sufficient, because not in compliance with the law in this, that the tender was too late.  Appellees deny this statement, and insist that the tender made by them was complete, and that they did all that could be required of them in making the tender.

"3.  Appellant affirms that the application, file, and survey of appellant's lessor for the land in controversy by location and survey of alternate certificates was prior to the creation of the reservation for the Texas & Pacific Railroad Company and segregated the land in controversy from the public domain.

"Appellees deny the truth of this affirmation, and insist that appellant's lessor never made any valid location and survey of certificates on the said land in controversy, and any pretended location and survey of said land by the Houston & Texas Central Railway Company was made after the reservation was created and by virtue of certificates others than the 240 filed, and are void.

"4.  The material and controlling question is, were the appellees, Bacon & Graves, entitled to have the land in controversy patented to them upon the payment of the purchase money under the provisions of the Act of the 14th of July, 1879, by reason of their application and survey of the land into sections prior to the legislation withdrawing said land from sale under said Act of July, 1879?

"Appellees affirm and appellants deny this.

"The above and foregoing statement is agreed to.

"A. C. WILMETH,

"T. D. COBBS,

"Attorneys for appellant, Jumbo Cattle Company.

"HANCOCK, SHELLEY & HANCOCK,

"Attorneys for appellees, Bacon & Graves."

The locations made upon the land in controversy by the Houston & Texas Central Railway Company, under which appellant claims, was prior to the Act of 1879 which authorized the sale of the land, and if valid segregated it from the unappropriated public domain of the State. If legally appropriated the act did not apply to it, and the application to purchase made by the appellees and the surveys made in pursuance thereof conferred upon them no right.

But we are of opinion that the company's locations were not valid, for the reason that at the time the lands were attempted to be appropriated by virtue of the certificates under which it now claims they were reserved from location by the Act of May 2, 1873, which created and defined a reservation for the benefit of the Texas & Pacific Railway Company. It is true that prior to that act the Houston & Texas Central Railway Company had filed upon the lands by virtue of 240 alternate certificates, but the files embraced a much greater area than could be covered by the 480 sections which were authorized to be surveyed and patented by virtue of those certificates. The surveys in pursuance of the file having been made upon that part of the area embraced within it, which does not include any of the land in controversy, exhausted all right which the company had acquired by virtue of that file as to the territory not included, and to all intents and purposes left that territory vacant and unappropriated public domain. After the surveys were actually made upon another part of the land the file as to the land in controversy stood as if it had never been made, and gave the company no right to apply other certificates to it after the land had been reserved from location for the benefit of another corporation. The application of the new certificates could only take effect as new locations, and all new locations after the Act of May 2, 1873, were without authority of law and void.

It is clear that the claim of title set up on behalf of the Houston & Texas Central Railway Company does not stand in the way of the appellees' recovery. The land was unappropriated and subject to sale by virtue of the Act of July 14, 1879, and the Act of March 11, 1881, amendatory thereof, at the time they made their application to purchase. We think too that the agreed statement shows that they have taken all the steps required of them to perfect their right to the land had those acts remained in force. However improbable it may be that this vast quantity of land could have been surveyed into sections of 640 acres each within two days, we feel bound to follow the explicit agreement that " on January 19 and 20, 1883, the said surveyor of Palo Pinto Land District surveyed the lands in controversy  *  *  *  into tracts of 640 acres each."

But it is insisted in argument that the application to purchase was not valid because it did not describe the land sought to be appropriated "section by section." It is not contended that the original act of 1879 required this, but that it was made requisite by section 6 of the amendatory

act of 1881. That section is as follows: "These lands shall be sold in tracts of 640 acres each, unless precluded by previous surveys, in which event the purchaser must include all the vacancy; and no tract shall have a greater frontage on any navigable stream or permanent water than one-half the square of such survey, excepting where surrounded by older surveys." Laws 1881, p. 25.

In our opinion this was not intended to prescribe or affect the form of the application. It simply prescribed the amount to be purchased in one survey. Its main object was probably to cause the lands which should be sold to be surveyed into sections with marked boundaries, for the convenience of holders under conveyances from the purchasers. It was hardly practicable to designate the boundary of each section desired to be purchased without a survey, and the act contemplated a survey after the application. Two surveys were certainly not required.

The question then is as to the effect of the Act of January 22, 1883, which repealed the acts under which appellees made application to purchase the lands. The application had been made and the land had been surveyed when the repealing act took effect. Had the appellees then acquired a vested right which the Legislature could not take away? Or at the time the act last referred to went into operation was there existing between the State and the appellees a contract which the State could not impair by a repeal of the law under which it was consummated? The ruling in White v. Martin, 66 Texas, 340, is decisive of the question. The only difference between that case and the case now before us is that in the former the purchase money (which was not tendered until after the repealing act took effect) was received by the State Treasurer. In the present case the Treasurer refused the tender. It is too plain for argument that the action of the Treasurer could not affect the rights of the parties. If the purchaser's right to acquire the land was taken away by the repeal of the law which authorized the sale the Treasurer could not conclude the State. He acted without authority and his act was void. So if notwithstanding the repeal the purchaser still had the right to complete his purchase by a compliance with the terms of the law under which his application and surveys had been made, the Treasurer could not defeat that right by refusing to receive the money. In the case cited it was held there was a vested right which was not destroyed by the repealing act. The cases previously decided were discussed in the opinion and were shown to be in harmony with the conclusion reached.

In Coleman v. Lord, 72 Texas, 288, since decided, it was held in effect that when the Land Board rejected a bid for the lease of the school lands, no contract was consummated although the bidder had complied with the law in making the bid. The decision was placed upon the ground that the board had been constituted agents of the State to lease the lands, and that until they had accepted a bid there was no contract, although they

may have violated their duty in rejecting it.    That ruling is in strict accordance with the principles announced in White v. Martin, *supra.*    It was there held that the statute which authorized a sale of the land conferred upon the surveyor the right to pass upon the responsibility of the applicant and to reject the application, and that until the application was received by him and the survey was made no vested right was acquired.

In so far as mere property rights are concerned we see no difference between the contract of a State and an individual and a contract between two individuals.    The formalities by which they are entered into may be different, but the principles affecting the two are essentially the same. When there is an offer made by an act of the Legislature which is accepted by an individual there is a contract, which it is not within the power of the State to impair.    After an acceptance a repeal of the law can not affect the contract, but until an acceptance a repeal of the act withdraws the offer and no contract can be made.    By the Act of July 14, 1879, the State offered to sell the land to any responsible person who would make application for it and cause it to be surveyed.    The appellees had accepted the terms by making application and procuring the surveys before the act was repealed.    The contract was complete and could not be impaired by the subsequent legislation which repealed the act.    The expenses of the surveys, in connection with the price to be paid to perfect the title, are a sufficient consideration to support the contract.    It can not be treated as a mere bounty or gratuity on part of the State.    These principles are recognized in the following authorities:    Durkee v. Board, etc., 103 U. S., 646; Hardeman v. Railway, 79 Mo., 632; Georgia Penitentiary Companies v. Nelms, 71 Ga., 301; Bransfield v. Littleburg, 2 Ga., 143; Montgomery v. Casson, 16 Cal., 189; Rector v. Philadelphia, 21 How., 300; Blatch. on Const. Prohibitions, sec. 82; Cool. Const. Lim., 347.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered December 9, 1890.