### C. HALL v. J. R. RUSHING AND R. J. BLOOMFIELD.

Decided November 25, 1899.

**1.   Judicial Notice of Survey Within Railroad Land Grant Reservation.**

Where the proof showed the survey of land in controversy to be 11 miles N. 42° W. from the county seat of Mitchell County, the court could take judicial notice that it was within the Memphis, El Paso & Pacific reservation as defined by the Act of May 2, 1873.

**2.   Survey Within Railroad Reservation Void, When.**

The location in July, 1873, within the limits of the Memphis, El Paso & Pacific land grant reservation, of a land certificate issued to the Houston & Texas Central Railway Company, was void and conferred no rights.

**3.   Public Domain—State School Lands—Lease.**

Lands illegally located by railway companies within the Memphis, El Paso & Pacific reservation reverted to the public school fund under the constitutional provision (article 7, section 2) setting apart one-half the public domain for the public free school fund, and a lease of such land by the Commissioner of the General Land Office conferred a right superior to that of parties actually settled on the land, but without other right than that of possession.

APPEAL from Mitchell.   Tried below before Hon. W. R. SMITH.

*W. B. Crockett,* for appellant.

*Geo. W. Smith,* for appellees.

CONNER, CHIEF JUSTICE.—This suit was instituted in the District Court of Mitchell County, Texas, by appellant, in the ordinary form of trespass to try title, to recover possession of 640 acres of land described as section 83 in block 97 of the Houston & Texas Central Railway Company surveys, located by virtue of certificate No. 43-5544, in which appellee R. J. Bloomfield disclaimed title to all of said section except the northwest quarter thereof, and the said J. R. Rushing disclaimed title to all of said section except the southwest quarter thereof, as to which quarters they interposed a plea of not guilty.

The facts upon which the rights of the parties depend are as follows:

In July, 1873, the precise day not being shown, said section of land was by the proper surveyor located and surveyed for the Houston & Texas Central Railway Company by virtue of certificate No. 43-5544, issued by the Commissioner of the General Land Office under an act entitled "An act to encourage the construction of railroads in Texas by do-

nations of land," approved January 31, 1854, and the amendments thereto, the field notes of such survey being filed in the General Land Office November 26, 1873.

Said section is situated in Mitchell and Scurry counties, about 11½ miles north 42° degrees west from Colorado City, the county seat of Mitchell County, and no patent thereto has ever been issued by the State of Texas, nor has any other survey of said land ever been made, nor does it appear that appellees in any way connect themselves with claim under such survey, it appearing only that appellee R. J. Bloomfield moved upon the quarter section claimed by him in November, 1897, and that appellee Rushing went upon the quarter section claimed by him on the 10th day of October, 1898, it not appearing in the record that either of said appellees had ever applied to purchase the quarter sections claimed by them, or have other title thereto than is to be inferred from the simple fact of actual posesssion.

Appellant claims title by virtue of a lease duly executed and delivered to him by the Commissioner of the General Land Office, purporting to act under and by virtue of the authority given him in title 87, chapter 12a, of the Revised Statutes of 1895, and the amendment thereto by Act of May 19, 1897, leasing said section to appellant for a term of five years from the 30th day of May, 1898, at 3 cents per acre per annum, said lease bearing date the 3d day of June, 1898, the proof showing that appellant had duly paid all amounts appearing to be due as annual rental, and that said lease was duly recorded in Scurry County, Texas, on the 22d day of June, 1898, and in Mitchell County, Texas, on the 13th day of July, 1898. Immediately upon the execution of said lease appellant took possession of said section 83, fenced it, and turned his stock thereon.

Upon this state of facts the trial court concluded:

"1. There is a legal outstanding title to said section of land in the Houston & Texas Central Railway Company, which existed at the date of the lease to plaintiff.

"2. The title to said land having passed out of the State prior to said lease, no right or title to said land was conferred on plaintiff by said lease."

Judgment was thereupon awarded appellees for the several quarter sections of land claimed by them, as hereinbefore stated.

We have not found it necessary to determine the question presented in assignments of error as to whether a location and survey before patent is such legal or paramount title as will defeat a plaintiff suing in trespass to try title and not claiming thereunder, as we are of opinion that there was error in the judgment below on another ground. If the location and survey in question is other than one of those expressly held to be void in the case of the Jumbo Cattle Company v. Bacon & Graves, 79 Texas, 9, we are nevertheless of the opinion that such survey was unauthorized and could not form the basis of an outstanding paramount title that must be given the effect of defeating appellant's lease and actual possession.

The Act of May 2, 1873, continuing the previous reservation in favor of the Memphis, El Paso & Pacific Railroad Company, was in force at the time of the location and survey of section 83 as shown in the record. Section 6 of that act provides that said reservation, from the twenty-third meridian of longitude west from Washington to the Rio Grande River, as designated by the field notes, maps, and reports from the different surveyors of the several land districts of the State on file in the General Land Office, should be continued to be set aside and reserved from pre-emption, location, and survey. Said section further provided that for the same purpose there should be set aside out of the public lands such additional width of territory on each side of the original reservation of sixteen miles wide as would make eighty miles in width from the said twenty-third meridian of longitude west to the east boundary line of New Mexico, etc., said reservation to extend, by the terms of the act, to forty miles on either side of the center line of said Memphis, El Paso and Pacific reservation. See Special Laws 1873, p. 318, et seq.

It is a familiar rule of evidence that courts will, without proof, take judicial notice of facts of a public or general nature. Blethen v. Bonner, 52 S. W. Rep., 571; Rule 15, 1 Sayles' Civ. Stats. 1897, bot. p. 836, and authorities therein and hereinafter cited. We must therefore know that the twenty-third meridian of longitude is east of Mitchell County, Texas. Wilson v. Dillingham, 38 S. W. Rep., 651. That Colorado City is the county seat of Mitchell County, Texas, and situated therein. Carson v. Dalton, 59 Texas, 500; Hambel v. Davis, 34 S. W. Rep., 439. That the northern boundary line of the reservation in question extends west from the southwest corner of Young County, Texas, to the east boundary line of New Mexico, and that a survey of land situated 11½ miles north 42° west from Colorado City is situated within said reservation. See Act approved December 21, 1857, 4 Sayles' Real Estate Laws of Texas, bot. p. 902; Woods v. Durrett, 28 Texas, 435; Duren v. Railway, 86 Texas, 288.

It was intimated by this court in Houston & Texas Central Railway Company v. The State of Texas, 36 Southwestern Reporter, 821, that locations and surveys within the Memphis, El Paso & Pacific reservation by virtue of certificates issued to said railway company, and made about the time, if not at the same time, as the location and survey here in question, were void; but the question was not then authoritatively decided, the certificates in that case being held void on another ground, That case was taken by appropriate proceedings to the Supreme Court of this State and also to the Supreme Court of the United States, each of which in express terms declined to determine the question. See 90 Texas, 607, and 170 U. S. (Law. Ed., Book 42), bot. p. 1123.

We think, however, that we must now hold that the location and survey by virtue of a certificate issued to the Houston & Texas Central Railway Company made in July, 1873, upon land situated, as in this case, within the said Memphis, El Paso & Pacific reservation, is absolutely void, and constitutes neither legal nor equitable title. To hold other-

wise would, in effect, destroy the evident purpose and object of the legislative act declaring the reservation.

In Kimmell v. Wheeler, 22 Texas, 77, our Supreme Court expressly held a location and survey void made by virtue of a Peters Colony certificate within the bounds of the reservation declared by the Act of December 21, 1853, "to provide for the construction of the Mississippi & Pacific Railroad." In Melton v. Cobb, 21 Texas, 539, the court held that a location and survey by virtue of the headright certificate of one not a colonist, upon land within the limits of the Mercer Colony reservation was invalid and conferred no title. Other analogous cases might be cited, but in addition to the authorities hereinbefore cited, it will perhaps be sufficient to again refer to the case of Woods v. Durrett, supra, in which it was not only decided that the courts would take judicial notice of the fact and boundary of the Memphis, El Paso & Pacific reservation, but also that a location and survey within its limits was invalid.

The only remaining question is, what effect shall be given to the facts relied upon by appellant as evidences of his right of recovery. In addition to the fact of appellant's actual possession under a lease, it was further shown, in effect, by certificate of the Commissioner of the General Land Office, that since the adoption of the Constitution of 1876 more than one-half of the then unappropriated public domain of Texas had been segregated and devoted to purposes other than the public free school fund. The effect of section 2, article 7, of that Constitution, in express terms appropriating "one-half of the public domain of the State," on the authority of Hogue v. Baker, 92 Texas, 58, was to segregate the land involved in this suit, it not having been otherwise legally appropriated, and constitute the same a part and parcel of the lands belonging to the public free school fund of this State.

That the Commissioner of the General Land Office was empowered to lease such lands, whether surveyed or unsurveyed, was decided by this court in the case of Harrington v. Blankenship, 52 Southwestern Reporter, 585. A writ of error was denied in that case, and it will be unnecessary to add to what we there said in support of such power.

It follows, appellant's lease being in due form and in full force, that he was entitled to recover, and, appellees having shown no title or right other than mere possession, it is ordered that the judgment below be reversed and here rendered for appellant.

*Reversed and rendered.*