

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN

~~ASSISTANT~~

ATTORNEY GENERAL

Mr. C. D. Simmons
Comptroller
University of Texas
Austin, Texas

Dear Sir:

Opinion No. O-4970
Re: Authority of Board of Regents
or Board for Lease to make
agreements waiving right to
insist upon development under
University Oil and Gas Permit
Leases, and related question.

This will acknowledge receipt of your letter of recent date wherein you requested the opinion of this department upon the above stated matter. We quote from your letter as follows:

"The facts in connection with the nondevelopment of the acreage covered by the oil and gas leases involved in the case of State v. Tide Water Associated Oil Co., 159 S.W. (2d) 192 (writ of error refused), is a typical example of the conditions in respect to the nondevelopment of a large amount of acreage held under other and similar leases on University lands. You will recall that in this case the lease covered a total acreage of 6,940 acres of University lands, and, except for a small tract of 80 acres upon which alone oil had been discovered and produced in paying quantities, no other part of this acreage had ever been developed for oil or gas. This acreage was not contiguous, but was scattered widely over four different counties in West Texas. The suit resulted in the cancellation of the lease as to the nondeveloped acreage involved.

"Approximately 110,000 acres of University lands are affected by this situation.

"A controversy has existed between the Board of Regents of The University of Texas and the Board for Lease of University Lands and the various lessees or assignees under these leases as to whether due diligence has been exercised for the

exploration and development under these leases for a great number of years.

"It has been suggested that these leases, in so far as they may affect the nondeveloped areas, be cancelled by suit or that the controversy be settled by a supplemental agreement between either the Board of Regents or the Board for Lease, or both, whichever has the authority to enter into such agreements with the present owners of said leases. It is proposed that such supplemental agreement provide and fix a definite term in which the lessees shall be required to either drill or pay rental, and that the leases, in so far as they affect such undeveloped areas, shall terminate at the end of said period unless oil or gas in paying quantities shall have been discovered and is being produced before the end of such term. That such agreements shall be so drawn as to provide that each separate tract of land covered thereby shall be considered a separate and independent unit for development purposes. Mr. Scott Gaines has prepared a tentative draft of such proposed agreement, a copy of which is enclosed to you herewith for your information.

".  .  .  .  .

"Accordingly, we would respectfully request your advice as to whether the Board of Regents or the Board for Lease has the authority to make the proposed agreement with the various owners of these leases in respect to the development of these undeveloped areas covered by their leases."

We gather from your inquiry that the leases in question like those involved in the case of State of Texas v. Tidewater Associated Oil Co., et al, supra, were all executed by the Land Commissioner under authority of the 1917 Permit Lease Act and its amendments, and this opinion is based upon that assumption.

While broad authority to sell or lease minerals in public lands dedicated to the University of Texas permanent fund was placed in the Board of Regents by the 27th Legislature, it is the prevailing opinion that such authority was limited to the so-called hard or solid minerals. See Acts, 1901, 27th Leg., Reg. Sess., p. 266, now Art. 2597, R.C.S., 1925; 31 Tex. Jur. 664, note 12. This belief finds support in the fact that the oil and gas industry was then in its infancy and that the Legislature at that

time was preoccupied with the development of other and then more common minerals.  See 31 Tex. Jur. 664, Sec. 87.

However, this question need not be debated here because such authority as might have existed in the Board of Regents was superceded in 1913 by the 33rd Legislature which in that year placed exclusive jurisdiction and authority over oil and gas leases on University lands in the Commissioner of the General Land Office.  See Acts, 1913, 33rd Leg., 1st C.S., p. 26.  Section 33 of the 1913 Act repealed all "laws or parts of laws relating to the sale of mineral lands."  This provision, we believe effectively terminated any authority to lease University lands which the 1901 Act might have placed in the Board of Regents.  Since it lacked authority to execute the leases originally, we can conceive of no rule of law which would make possible a holding that the Board of Regents, nevertheless, now has authority to either forfeit or modify such leases.  Certainly no statute so provides.

At the outset, therefore, we can eliminate the possibility that the Board of Regents has the power or authority to either forfeit or modify the leases in question and turn to a consideration of the question of the existence of such authority in the Board for Lease of University lands.

In 1917 the Act of 1913 was redrawn by the 35th Legislature and the Permit Lease Act is now generally known as the Act of 1917; it will be so referred to hereafter in this opinion. While many changes in phraseology were made by the 35th Legislature, the Act of 1917 was, in substance and for all purposes necessary to this inquiry, identical with the 1913 Act.  The later act retained in the Land Commissioner the exclusive authority to execute and supervise leases on University lands conferred on him by the Act of 1913.  See Acts, 1917, 35th Leg., Reg. Sess., p. 158;  State v. Bradford, 50 S.W. (2) 1065, 1074, modifying 25 S.W. (2) 706.

The Act of 1917 remained in effect, insofar as it applied to University lands, until 1925 when the Legislature abandoned the Permit plan of leasing these lands and adopted a new method. See Acts, 1925, 39th Leg., Reg. Sess., Ch. 71, p. 225.  Section 1 of the 1925 Act, as found in Vernon's Annotated Statutes under the heading "Additional Legislation", following Article 5343, provides that oil and gas leases upon University lands, as well as leases on other lands therein named, should thereafter be controlled by its provisions.  Sole authority to lease University lands for oil and gas is retained in the Land Commissioner, and, as was the case in the Acts of 1913 and 1917, exclusive power to forfeit was continued in that official.

Although the 1925 Act sets up an entirely new method of executing leases on University lands, it continued in force for a limited period all permits issued under the Act of 1917. No express repeal of the Act of 1917 is contained in the 1925 Act, and, as a matter of fact, no repeal provision of any nature is included. However, since under the provisions of both acts, exclusive jurisdiction over the execution and forfeiture of oil and gas leases on University lands was vested in the Land Commissioner, no question of conflict of authority between officials was possible under the two acts. The 1925 Act merely provided for a different procedure by which the same official was thereafter to perform the same official function. Unquestionably, the Act of 1917, after the passage of the 1925 Act, continued to control leases theretofore issued under its provisions.

In 1929, the Legislature for the first time took from the Commissioner of the General Land Office the authority to lease University lands for oil and gas. The 41st Legislature in that year created the Board for Lease of University Lands and vested in it the sole and exclusive authority to execute oil and gas leases on University lands. See Acts, 1929, 41st Leg., Reg. Sess., p. 616 (codified as Art. 2603a, Vernon's Ann. St.) The creation of this new board and the vesting in it of authority which formerly rested in the Commissioner of the General Land Office to execute leases on University lands gives rise to the question of whether the Board or the Commissioner thereafter had jurisdiction over oil and gas leases issued under the prior acts.

The 1929 Act is, in scope and by its express terms, concerned with the execution of leases and in the future supervision of such leases. Thus Section 9 of the 1929 Act deals only with obligations undertaken "during the term of any lease issued under the provisions of this Act", while Section 13 provides authority in the Board for Lease to forfeit rights acquired by lessees "under this Act". The 1929 Act does not expressly concern itself with control of leases in existence at the time of its enactment.

The express limitation on the authority of the Board for Lease to supervision of leases and to obligations and rights undertaken or acquired by lessees under the Act, indicates a legislative intent that leases executed under prior laws were to be controlled by the laws under which they were executed.

Section 18 of the 1929 Act provides:

"Any and all or parts of laws in conflict with this Act are hereby repealed."

This is what is known as a general repealing provision, one that does not expressly name the statutes which it repeals.

A general repeal is effective to repeal prior enactments only to the extent of inconsistency or repugnancy with the terms of the later statute. Gaddes v. Terrell, 101 Tex. 574, 110 S.W. (2) 429; Johnson v. Ferguson, (Civ. App., Austin, 1932) 55 S.W. (2) 153, error dismissed. Insofar as the Act of 1917 and its amendments do not conflict with the 1929 Act, the prior act remains in full force and effect.

In 1931, the Legislature adopted certain amendments to the 1929 Act. Specifically, it amended Sections 4, 5, 6, 7, 8, 9, 10 and 18, retaining in Section 18 the general repeal provision quoted above. Again in 1937, the Legislature amended Sections 4, 5, 6, 7, 8 and 18 and in addition amended Section 14. The identical general repeal provision was again retained in Section 18.

It will not be necessary for the purpose of this opinion to go into the nature of the 1931 and 1937 amendments generally. We will mention only those which we feel have some bearing on your questions.

Section 8 as amended by the Legislature in 1931 authorized the Board to execute leases with primary terms not exceeding five years instead of three years as provided in the 1929 Act and authorized the Board to extend the primary terms for an additional five years under certain conditions. It also placed within the Board's discretion the authority "to pro-rate, reduce or discontinue production on any of the University oil and gas leases, by agreement with lessees for a limited period." The 1937 amendment continued only this latter authority. The authority to modify leases in that limited respect is broad enough to include permit leases. We believe it to be the only provision in the Act broad enough to encompass leases executed under prior laws.

Another provision contained in the 1931 amendment to Section 8 of the 1929 Act is the following subsection:

"(c) Whenever in the discretion of said Board it is for the interest of the University and its permanent fund to extend a lease issued by said Board or the Land Commissioner, said Board for Lease of University Lands is hereby granted and given full authority to extend said lease for a period not to exceed five (5) years, upon condition that the lease (lessee) shall continue to pay yearly rental as provided in the lease, and such additional terms as the Board for Lease may see fit to demand. Said Board is hereby given full authority to extend such leases and execute an extension therefor."

The 1937 amendment to Section 8 eliminated from the Act the quoted provision, and all other authority which the 1931 amendment had placed in the Board, to extend the primary terms of leases on University lands.

Now, what is the significance of these amendments to the 1929 Act?

It is obvious that the Legislature has been very sparing in its grants of authority to the Board for Lease to modify any of the leases on University lands. The authority which it gave to the Board in 1931 to extend the primary term of leases, it took away in 1937. The only modifying power it has left in the Board is that of prorating or discontinuing production in the interest of the University permanent fund. We do not believe that this power is sufficiently broad to authorize the board to excuse non-development, even for a valid consideration.

In the absence of specific authority to modify, changes in the terms of a lease executed by the Board for Lease could be brought about only by entry into a new lease contract. The Board's authority to execute a lease, however, under the provisions of Sections 5, 7 and 8 of Article 2603a is restricted by the requirement that leases be awarded to the highest bidder. Where, as here, the Legislature has provided a particular method for the exercise of an official function by a board, it is generally held that the method prescribed is exclusive. Bryan v. Sundberg, 5 Tex. 418; 34 Tex. Jur. 453, Sec. 74.

Lacking authority to modify leases which it, itself, has executed, the Board for Lease must, of necessity, be held powerless to modify leases entered into by the Commissioner of the General Land Office prior to the creation of the Board. The authority to modify must be specifically granted by the Legislature. It cannot be implied from authority to enter into the original contract. Mann v. Dublin Cotton Oil Co., 92 Tex. 377, 48 S.W. 567; Grovier-Starr-Parvin Co., v. N. Nigro & Co., (Civ. App. Dallas, 1922), 240 S.W. 578; 2 Tex. Jur. 469, Sec. 73.

Neither the 1929 Act nor the amendments of 1931 and 1937 give to the Board for Lease, in express terms or by necessary implication, any authority over leases already in effect or permits then extant except to the limited extent stated.

If it had been the intention of the Legislature to vest in the Board for Lease jurisdiction over all leases on University lands, including those executed by the Land Commissioner prior to 1929 under the Act of 1917 or the Act of 1925, it seems certain that it would have expressly repealed the Act of 1917 and the Act of 1925 and would have vested the authority then existing in the Land Commissioner in the Board for Lease.

In the absence of express repeal of the Act of 1917, we must conclude that its provisions still control leases executed under it by the Commissioner of the General Land Office. State of Texas v. Tidewater Associated Oil Co., 159 S.W. (2) 192, error refused. See also 31 Tex Jur. 664, Sec. 86. The further conclusion is inevitable that the Board for Lease does not have any authority to either forfeit or modify leases executed under the Act of 1917. Such authority, if any, is in the Land Commissioner.

This answers the specific inquiry you have propounded; however, in anticipation of a further inquiry as to the authority of the Land Commissioner to forfeit or modify, we deem it advisable to examine the question of the Commissioner's authority and advise you also in this regard.

A brief resume of the provisions of the Act of 1917 at this point may be of some help in explaining our conclusions.

The Act of 1917 contemplated the issuance of leases on University, and other lands included within its provisions, by the Commissioner of the General Land Office. Under that Act, anyone desiring the right to explore a particular tract of land for oil and gas was required to apply to the Commissioner for an exclusive permit to explore the land, accompanying the application with certain payments. If the exploration resulted in the discovery of oil or gas, the Commissioner was authorized and required, upon the request of a permittee who had compiled with the other requirements of the Act, to issue a lease to him upon the area covered by his permit.

The 36th Legislature liberalized the requirements of the 1917 Act by providing for a combination of permits and the issuance of a lease upon the completion of a well on any one of the several permit areas included in the combination. See Sections 12, 13, 14 and 17 of Relinquishment Act, Chapter 81, Acts 1919, 36th Leg. 2nd C.S., p. 249-254.

The sections of this Act which relate to combinations of permits have been codified as Articles 5374, 5375, 5376 and 5343, R.C.S., 1925, respectively.

Section 19 of the Act of 1919, generally known as the "Relinquishment Act", provides that except insofar as they were changed by this Act, the provisions of the 1917 Act should remain in full force and effect.

Among the provisions of the 1917 Act which were not affected by the 1919 Act is Article 5350, R.C.S. 1925, which provides that, "Should the owner of a permit fail or refuse to begin in food faith the work necessary to the development of the

area within the time required, or to proceed in good faith and with reasonable diligence in a bona fide effort to develop an area included in his permit after having begun the development . . . . the permit or lease shall be subject to forfeiture. When the Commissioner ( of the General Land Office) is sufficiently informed of such facts he may declare the permit or lease forfeited by proper entry upon the duplicate thereof in his office . . ."          (Parenthetical matter added)

The printed forms of the leases issued by the Land Commissioner under this Act provide as follows:

"3.   The owner of the rights herein conveyed shall proceed with reasonable diligence in a bona fide effort to develop and operate the area  leased and to prosecute such drilling operations with due and reasonable diligence to the usual depths at which oil is found in other wells in the same vicinity. . . . . . ."

We are advised that each of the leases executed under the provisions of the Act of 1917 contains this particular provision.

It is apparent that neither Article 5350, R.C.S. 1925, nor the quoted provision in the lease make any provision for payment of indemnity in lieu of bona fide and diligent development.  The Land Commissioner's authority is limited to that granted.  If he finds that bona fide and diligent development is lacking, he has the power to forfeit the lease.  No discretion is given to him to require anything more than, nor to accept anything  less than, that required by the statute.  The statute and the lease require bona fide and diligent development under penalty of forfeiture.

We have stated at several points in this opinion that the land Commissioner and the Board for Lease are powerless to modify contracts entered into on behalf of the State.  It should be borne in mind that we are not here concerned with a question of the power of the State to contract or to modify an existing contract.  The sole question involved in this opinion is whether or not the Legislature has authorized these particular officials to modify the contracts in question.

Un questionably, the State of Texas has power to contract equivalent to that of a corporation or an individual and it has been aptly stated that this is one of the attributes of soverignty, Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197, 157 S.W. 937; Jumbo Cattle co. v. Bacon, 79 Texas 5, 14 S.W. 840; Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722; Dikes v. Miller, 25 Tex. Supp. 281.

The State of necessity contracts only through its agents and it may be bound by a contract only if its agent is authorized to enter into the particular contract. The State is not bound by contracts made in its behalf by its agents or officers without previous authority conferred by law. Terrell v. Sparks, 104 Tex. 191, 135 S.W. 519; State v. Perlstein (Civil App. ) 9 S.W. (2) 143, Error Dismissed.

In the absence of a clear expression in the State Constitution forbidding it, the Legislature may authorize modification of its contracts by its agents. Rhoads Drilling Co. v. Allred, (Comm. App.) 70 S.W. (2) 576.

"The State cannot enjoy and exercise fully the important right to contract unless it is permitted through officers or representatives authorized by the Legislature to modify its executory contracts when a proper occasion arises." Rhoads Drilling Co. v. Allred, supra.

The case from which the above quotation is taken, Rhoads Drilling Co. v. Allred, involved a construction of Subsection 6b of Section 8-A of Art. 5421c, Vernon's Annotated Civil Statutes, expressly conferring upon the Board for Mineral Development the authority to revise oil or gas leases on river-beds upon request of the lessee. The authority granted by the Statute is broad and places extensive discretion in that Board.

No such broad authority has been conferred upon either the Board for Lease or the Land Commissioner over oil and gas leases on University lands.

It is therefore the opinion of this Department and you are so respectfully advised that neither the Board of Regents nor the Board for Lease has any authority to forfeit leases executed under the Act of 1917 or to modify them by entering into the proposed agreement. It is the further opinion of this department that the land Commissioner has the authority to forfeit such leases for failure of the lessees to develop in a bona fide and diligent manner and that the Land Commissioner is without authority to modify the terms of such leases by entering into the suggested agreement.

Trusting that we have fully answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Peter Maniscalco
    Peter Maniscalco
    Assistant

PM:ff:wc

APPROVED MAR 6, 1943
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman