Statement of the case.

R. E. WHITE ET AL. V. THOS. P. MARTIN ET AL.

(Case No. 5684.)

1. VOID LAND CERTIFICATE—A land certificate issued by those without necessary authority, defective in terms, having been rejected by the court of claims, never having been recommended by any of the boards for the detection of fraudulent land certificates, and never having been established by suit is void, and cannot be made the foundation of a right.

2. GRANT—LEGISLATURE—CONSTITUTION OF 1870—Under the constitution of 1870, the legislature had no power to make a grant of land. (Authorities cited.) A special act directing a certificate to issue in lieu of another one pronounced void is, in effect, a donation.

3. ACT OF JULY 14, 1879, CONSTRUED—The first step to be taken by a purchaser, under the act of July 14, 1879, was to apply to have the land surveyed. This application was to be made to the surveyor of the county wherein the land to be bought was situated. By the application, however, the applicant acquired no right; for unless, in the opinion of the surveyor, he was a responsible applicant, it was not the duty of the surveyor to survey the land.

4. SAME—APPLICATION—The act indicates a desire to raise money by sale; and if a mere application to purchase, operated as a withdrawal of the land from sale, the purpose of the act could be defeated for a time for speculative purposes by applicants neither intending nor able to purchase. It was intended that an application should not affect the right of the state to sell to any person taking the necessary steps to buy, or to grant to an actual settler.

5. SAME—SURVEY—All preceding steps to be taken by the applicant under the act being regular and satisfactory, the applicant can acquire no right until the surveyor has performed the act which the law declares shall operate as a purchase. Until there is a purchase there can be no right which the law recognizes.

6. SAME—PURCHASE—The applicant may become a purchaser by causing the land to be surveyed. When this is done as the act contemplates, the state contracts, upon the purchaser's complying with the other requirements of the act, that it will convey to him the land surveyed. When this is done there exists an executory contract, under which the purchaser has a vested right of which subsequent legislation cannot deprive him.

7. SAME—PAYMENT—PATENT—FORFEITURE—The survey of the land having been completed, the purchaser could pay to the state treasurer the purchase money, and on presenting his receipt therefor to the commissioner of the land office, he was entitled to a patent for the land surveyed and payed for. By failure, refusal or neglect of the purchaser to pay within the prescribed time his right was forfeited.

8. ACT OF MARCH 31, 1883, CONSTRUED—The act of March 31, 1883, validating surveys and patent by virtue of certificates issued under special laws passed under the constitution of 1870, cannot retroact and make that, which was no title at all at the time another title accrued, superior to that other title. (Authorities cited.)

APPEAL from Archer. Tried below before the Hon. B. F. Williams. This was an action of trespass to try title. Reuben E. White and John Snodgrass, with other heirs of David Snodgrass, brought suit to

recover of Thomas P. Martin and others, six hundred and forty acres of land in Archer county.

The first amended original answer of defendants contained a general exception, general denial, and "not guilty," and a special plea setting forth the titles of the respective parties, which are sufficiently stated in the opinion of the court. The case was tried by the court, and a judgment rendered for defendants, Thos. P. Martin and others.

*F. E. Dycus*, for appellants, cited: Shields v. Hunt, 45 Tex., 425; Fitch v. Boyer, 51 Tex., 337; Johnson v· Timmons, 50 Tex., 521; Gullet v. O'Connor, 54 Tex., 408; Clark v. Smith, 59 Tex., 279; Holmes v. Anderson, 59 Tex., 482; General Laws of 1883, p. 38; Mitchell v. Bass, 26 Tex., 372; League v. Rogan, 59 Tex., 427; Constitution, art. 14, sec. 2; General Laws of 1883, p. 2: State v. Work, 63 Tex., 148; Wade on Retroactive Laws, sec 299; Martin v Brown, 62 Tex., 485.

*Hunter, Stewart & Peacock*, for appellees, cited: Constitution of 1870, art. 10, sec. 6; Bacon v. Russell, 57 Tex., 409; Holmes v. Anderson, 59 Tex., 482; Wright v. Hawkins, 28 Tex., 470; Milam County v. Bateman, 54 Tex., 153; Snider v. Methvin, 60 Tex., 487; McKinney v. Brown, 51 Tex., 96; Hines v. Thorn, 57 Tex., 98; Adams v. House, 61 Tex., 639.

STAYTON, ASSOCIATE JUSTICE.—The appellants claim the land through a patent, which issued in August, 1883, upon a location made in 1874 upon a certificate issued to Absalom P. Joyce, under a special act of the legislature, passed April 26, 1873. That act directed the commissioner of the general land office to issue to "Absalom P. Joyce six hundred and forty acres, headright, in lieu of No. 162, issued in Shelby county, without the conditional." Special Laws, 1873, p. 307. Headright certificate No. 162, referred to in the special act, purports to have been issued by the board of land commissioners of Shelby county, on May 27, 1840. It was not only issued without the prior issuance of the conditional certificate required by law, but was issued by persons who had no authority to act at the time it was issued. P. D., 4133.

It was presented to the court of claims for approval, and was rejected on April 5, 1858. There is nothing to show that it was ever recommended by any of the boards appointed to detect fraudulent land certificates, nor that it was established by suit. Under this state of facts, certificate No. 162 was void, and could not be made the foundation of a right. Constitution 1845, art. 11, sec. 2; Miller v. Brownson, 50 Tex., 595.

The special act of the legislature directing a certificate to issue in lieu of it, was but, in effect, a direction to issue a land certificate as a donation. Such legislation would be the first and most important step in making a legislative grant of land. This, under art. 10, sec. 6, of the constitution then in force, it has been held, the legislature then had no power to make. Bacon & Bates v. Runnell, 57 Tex., 415; Holmes v. Anderson, 59 Tex., 482.

The appellee believing the land to be vacant, made application to the proper surveyor on November 23, 1882, to survey the land for him, under the act of July 14, 1879, and the act of March 11, 1881, amendatory of the former act, and in accordance with his application the land was so surveyed on December 21, 1882. The field notes of this survey were filed in the general land office on January 30, 1883, and on March 27, following, he paid to the state treasurer the full price of the land made necessary by the act under which he sought to purchase. It is contended that these facts conferred no right on the appellee which could not be defeated by the provisions of the act of March 31, 1883, (General Laws, 1883. p. 38) validating patents and surveys by virtue of headright and bounty warrants, issued under special laws enacted after March 31, 1870, and prior to April 17, 1876.

In Campbell v. Blanchard, decided at the last term of this court, and in the State of Texas v. Work, 63 Tex., 148, it was held that persons, who had done nothing more than to make applications for surveys, prior to the act of January 22, 1883, which withdrew from sale the land put on sale by the act of July 14, 1879, and the amendment thereto, had no vested right to the lands which they sought to purchase. This is evident from a consideration of the act itself; and persons claiming rights under it must show that they had done such acts as, in connection with the law, entitled them to the land. If the act of July 14, 1879, be considered as a proposition made by the owner of land to sell to whomsoever might desire to buy, then it is certainly true that one desiring to become a purchaser would have to comply with the terms upon which the owner proposed to sell, before he could acquire any right.

The first step to be taken under the act, by one desiring to buy, was an application to survey the land desired. This application had to be made to the surveyor of the county in which the land was situated. This application, however, conferred on the applicant no absolute right to have a survey made, for it was only when such applications were made by responsible parties, that the law made it the duty of the surveyor to make such surveys. Who was to judge whether the applicant was a responsible person? Certainly, the surveyor, at least

in the first instance, and there were good reasons, when we look to the whole act, why the right to have a survey made was made to depend on the responsibility of the applicant.

The land embraced in the act was open to pre-emption, as well as to sale, and it was the policy of the state not to withdraw the land from appropriation to homestead claims upon the mere application of speculators who, if a mere application to purchase would operate to withdraw it from such appropriation, might apply for land which they neither intended nor had the ability to purchase, and so, for the purpose of speculating on those who desired to become actual settlers—a class always favored by the laws of this state providing for the disposition of its vacant public domain.

The act itself indicates a desire to raise money by sale, and if a mere application to purchase could have the effect to withdraw it from sale, for any period of time, that purpose could be defeated for a time for speculative purposes by applications made by those who neither intended nor were able to buy. The whole act shows that an application was not intended to affect the right of the state to sell to any person who might take the steps necessary to buy the land, or to grant it to an actual settler.

The second section of the act provides: "That any person, firm or corporation, desiring to purchase any of the unappropriated lands herein set apart and reserved for sale, may do so by causing the tract or tracts which such person, firm or corporation desires to purchase, to be surveyed by the authorized public surveyor of the county or district in which said land is situated."

The application evidences a desire to purchase, *i. e.*, to acquire the right to have the land applied for by further complying with all the terms of the act, but this desire may not be regarded by the surveyor, if, in his judgment, the applicant be not a responsible person, and thus the application be ineffective in placing on the surveyor even the duty to survey.

If the applicant be deemed or even declared a responsible person, still the statute does not declare that the application shall operate as a purchase. Until there is a purchase, there can be no right which the law recognizes. The application to buy or to have surveyed may be regular, the surveyor satisfied of the responsibility of the applicant, and ready to make the survey, but when this point has been reached, they have only arrived at that stage of the negotiation and discharge of duty by the surveyor which authorizes him to do the act which the law declares shall operate as a purchase. The surveyor then has the power, but until it is exercised by doing the very act which the law

declares shall operate as a purchase, his will, combined with the will of the applicant, can no more operate as a sale or purchase, than can the willingness of an attorney, acting under a power which provides the manner in which it shall be exercised, coupled with the expressed desire of the purchaser to buy at fixed terms, operate as a sale, until the sale is consummated by the exercise of the power in the mode and manner provided.

How may the applicant become a purchaser? The statute answers the question. He "may do so by causing the tract or tracts which such person, firm or corporation desires to purchase to be surveyed." When this is done as the act contemplates, then, and not before, the state contracts, upon the purchaser's complying with the other requirements of the act, that it will convey to him the land surveyed. When this point was reached, there existed an executory contract which gave the purchaser a vested right, upon complying with his part of the contract, to have the land purchased, of which subsequent legislation cannot deprive him.

On the faith of the state's promise, the applicant, in good faith, expends money to have the land surveyed or incurs obligation to pay.

The eighth section of the act provides that "after the survey of any of the public domain authorized by this act, it shall not be lawful for any person to file or locate upon the land so surveyed, and such file or location shall be utterly null and void." Thus is further evidenced the intention of the legislature that no right should be deemed to vest in an applicant prior to a survey; prior to which time it might be appropriated by a pre-emptor, or by any responsible person, without infringing any vested right of a former applicant.

The survey was made for the appellees within the time prescribed by law, and thus was vested his right. The field notes were returned to the general land office within the time required by law, as was the full price for the land paid to the treasurer of the state.

The law, at the time the right vested, declared that "it shall be the right of the person, firm or corporation, who has had the same surveyed, to pay, or cause to be paid, into the treasury of the state, the purchase money therefor, at the rate of fifty cents per acre, and upon the presentation to the commissioner of the general land office of the receipt of the state treasurer for such purchase money, said commissioner shall issue to said person, firm or corporation a patent for the tract or tracts of land so surveyed and paid for."

The ninth section declares that if the applicant fails, refuses or neglects to pay for the land within the time prescribed, "he shall forfeit all right thereto."

A right cannot be forfeited before it exists, hence we have the clear declaration in the statute that it is not the payment of the purchase money which vests the right to have the land, but that the right vests in the person who has had the survey made, which, however, may be lost by failure to comply with the other terms required of him. The right of the appellees under the facts must stand as though the act of January 22, 1883, had not been passed. It is claimed, however, that the act of March 31, 1883, validating surveys and patents, by virtue of certificates issued under special laws, passed while the former constitution was in force, confers upon the appellants better right than have the appellee under his purchase.

If the act last referred to be applicable to the appellants, a matter which it is unnecessary in this case to consider, it cannot be held that it can retroact and make that which was no title at all, at the time the appellees' right accrued, the superior title. Wright v. Hawkins, 28 Tex., 452; Sherwood v. Fleming, 25 Tex. Sup., 428; Milam County v. Bateman, 54 Tex., 154.

There is no error in the judgment and it will be affirmed.

AFFIRMED.

[Opinion delivered April 23, 1886.]