THE KENTUCKY CATTLE RAISING COMPANY v. GEORGE BRUCE ET AL.

No. 2955.

1.   **School Lands, Withdrawal from Sale.**—Under the laws in force October 2, 1882, the Commissioner of the General Land Office had the power to withdraw school lands from market upon discovering that the tabulated reports as to value, etc., for the county where the lands are situate were erroneous.   Act of April 6, 1881, Laws 17th Leg , 119.

2.   **Application to Purchase School Lands Withdrawn.**—When it was shown that the school lands in Crosby County had been withdrawn from market by the Commissioner of the General Land Office any application to buy such lands while so withdrawn was of no effect.

3.   **Cases Adhered to.** — White v. Martin, 66 Texas, 342, adhered to in holding that section 7 of Act of April 14, 1883 (Laws of Eighteenth Legislature, page 106), did not protect the rights of an applicant to purchase who had only made application and had done nothing more at the time the lands were withdrawn from sale by the Act of February 3, 1883.

4.   **Dormant Equities—Actual Settler—Cases Adhered to.**—If a settler whose right to purchase had become dormant, and whose equitable claim is renewed by statute, within the time specified in the act restoring vitality to his claim shall comply with the law for acquiring the land upon which he is a settler before the legal title to the land passed from the State to another, the right of such settler to the land so acquired becomes perfect; all efforts by others by location or to purchase are defeated.

APPEAL from Baylor.   Tried below before Hon. J. V. Cockrell.

The opinion states the case.

*D. W. Doom,* for appellant.— 1.   The intention of the order of the Commissioner of the General Land Office dated October 2, 1882, to the surveyor of Young Land District was to withdraw from the market indefinitely the school lands in Lubbock and Crosby counties, including the land in controversy, and under the law of 1881 placing school lands in organized and unorganized counties on the market the Commissioner of the General

Land Office had no authority to withdraw said lands or any part thereof from the market permanently, indefinitely, or even temporarily after the appraisement of said lands had been approved by said Commissioner, save for the purpose of correcting any errors that had been made in the valuation, in the description of its soil, timber, or water, or to raise the valuation; and if either of the emergencies mentioned above existed he should proceed without unreasonable delay to have such errors corrected or the valuation raised, when the land would again be on the market.   Act April 6, 1881, secs. 2, 4; Act April 14, 1883, sec. 7; Act April 12, 1883, sec. 5; Act February 3, 1883.

2.   The defendant W. B. Slaughter being an actual settler upon the land at the time of the passage of the Act of April 6, 1881, had the preference in the purchase thereof for the period of six months next after the value thereof was fixed and notice given to the surveyor, which was between November 25, 1881, and January 1, 1882, and having failed to make purchase for six month after January 1, 1882, lost his preference right; and B. W. Morris, under whom plaintiff claims, having made his application to purchase on the 2nd day of February, 1883, and tendered the purchase money as required by law, acquired a right to the land which was fully recognized and confirmed by section 7 of the Act of April 14, 1883, which took effect from passage, before the Act of April 12, 1883 (under which defendant W. B. Slaughter made application to purchase and claims the land), took effect, which was ninety days after the adjournment of the session; and the Commissioner of the General Land Office and the Governor of the State correctly so decided in issuing the patent to plaintiff as assignee of B. W. Morris, notwithstanding the application of the defendant W. B. Slaughter under the Act of April 12, 1883, and the judgment of the court should accordingly have been for plaintiff.   Act February 3, 1883; Act April 6, 1881, secs. 2, 4; Act April 14, 1883, sec. 7; Act April 12, 1883, sec. 5; Snyder v. Munn, 66 Texas, 255; Young v. O'Neal, 54 Texas, 544; Sherwood v. Fleming, 25 Texas Supp., 429; Potter v. Skidmore, 19 Texas, 533; Edgar v. Galveston, 21 Texas, 302; Todd v. Fisher, 26 Texas, 239; Martin v. Brown, 62 Texas, 467, 485.

*Browning & Newton,* also for appellant.

*Smith & Smith,* for appellees.— 1. The Act of April 6, 1881, entitled "An act to provide for the sale of alternate sections of lands in organized counties as surveyed by railroad companies," etc., giving the Commissioner of the General Land Office authority and making it his duty to refuse to approve the tabulated report of school lands transmitted by the County Commissioners Court when he may believe or have reason to believe that the proper description has not been given of the soil, timber, or water of said land, also impliedly gave him authority and made it his

duty to withdraw from sale any school lands after the same have been placed upon the market, at any time he may believe or have reason to believe that the proper description of said lands has not been given.    Acts 17th Leg., p. 120, sec. 4.

2.    The facts that appellee Slaughter was an actual settler on the land in controversy on the dates mentioned in appellant's second assignment of error, and that he had made valuable improvements thereon prior thereto, and that he had filed with his application to purchase said land his affidavit, together with the affidavits of two credible citizens of his county, stating that he is and was on the 1st day of January, 1883, an actual settler in good faith upon said land, and that he settled on it with a view to purchase it, are conclusive on the question of good faith on the part of said Slaughter.    Acts 18th Leg., p. 85, sec. 5; Hamilton v. Avery, 20 Texas, 634, 635; Perry v. Coleman, 1 Posey's U. C., 313.

3.    Appellee Slaughter having settled and made improvements on said land prior to the 6th day of April, 1881, his right to the land in controversy had its inception on that date.    Acts 17th Leg., p. 119, sec. 2; Hamilton v. Avery, 20 Texas, 634, 635; Johnson v. Eldridge, 49 Texas, 507; Howard v. Perry, 7 Texas, 259.

4.    The land in controversy was on February 3, 1883, withdrawn from sale by act of the Legislature.    Prior to that time said B. W. Morris, under whom appellant claims, had not done anything tending towards the acquisition of said land more than to file his application with the surveyor.    Hence if appellant has ever acquired any right at all to the land his right did not have its inception until the Commissioner of the General Land Office had proceeded under the Act of April 14, 1883, to perfect title in said Morris under his said application, to-wit, on the 16th day of April, 1884.    Acts 18th Leg., ch. 6; State v. Work, 63 Texas, 148; White v. Martin, 66 Texas, 340; Sherwood v. Fleming, 25 Texas Supp., 429.

5.    Appellee Slaughter's claim to the land as an actual settler having made improvements thereon was an equity which became dormant by his failure to purchase within the time prescribed by the Act of April 6, 1881, but the State not having been divested of the fee in the meantime it was revived in all its force by the Act of April 12, 1883, giving appellee Slaughter a preference right for six more months to purchase said land; and it effectually precluded further action by B. W. Morris and defeated his right under his application, if indeed his application was valid and gave him any right to the land at the time it was made.    Acts 17th Leg., p. 119, sec. 2; Acts 18th Leg., p. 108, sec. 7; Johnson v. Eldridge, 49 Texas, 507; Hamilton v. Avery, 20 Texas, 634; Jennings v. De Cordova, 20 Texas, 508; Hart v. Gibbons, 14 Texas, 214; Lewis v. Mixon, 11 Texas, 564; Howard v. Perry, 7 Texas, 25; Warren v. Shuman, 5 Texas, 44; Perry v. Coleman, 1 Posey's U. C., 312.

6.    B. W. Morris, under whom appellant claims, made his application

to purchase the land in controversy at a time when the same was not on the market; his application was therefore void, and the patent issued to him thereunder being contrary to law was also void.    Snyder v. Nunn, 66 Texas, 255; Gammage v. Powell, 61 Texas, 629; Woods v. Durrett, 28 Texas, 437; Sherwood v. Fleming, 25 Texas Supp., 427; Kimmell v. Wheeler, 22 Texas, 77.

HOBBY, JUDGE.—This is an action to try the title to 640 acres of land in Crosby County, described as section 106 in block 8, Houston & Great Northern Railway Company survey.    The suit was first brought against George Bruce on June 1, 1886.    He disclaimed, and on November 24, 1886, the appellees, W. B. Slaughter and his tenant R. M. Crutchfield, were made defendants by an amended petition.

Judgment was rendered for defendants, from which this appeal is prosecuted.

There is no statement of facts contained in the record, but it appears from the conclusions found by the judge who tried the case that the land was school land, and was placed upon the market for sale under the Act of April 6, 1881.    That in October, 1882, the following letter was written by the Commissioner of the General Land Office to the surveyor of Young Land District, where the land in controversy was situated:

"GENERAL LAND OFFICE, AUSTIN, TEXAS, October 2, 1882.
"*George N. Heifren, Esq., Surveyor Young Land District:*

"SIR—Numerous errors having been discovered in the description of the school lands embraced in the tabulated reports for the counties of Crosby and Lubbock, you are hereby notified that said lands are withdrawn from market from the date of the reception of this notice, and you are directed to receive no application for the purchase of school land in said counties of Crosby and Lubbock until further advice from this office.

"Respectfully,
"W. C. WALSH,
"Commissioner General Land Office."

On February 2, 1883, W. B. Morris, under whom appellant claims title, made an application to said surveyor to purchase said land, which the surveyor received under protest.    He tendered the first payment to the Treasurer on March 29, 1883, which was refused.

On the 3rd day of February, 1883 (Laws Eighteenth Legislature, page 3), all the land placed on the market under the Act of 1881 was withdrawn from sale.

On April 12, 1883, the sale of this land was again provided for.    Laws 1883, p. 85.    By section 5 of this act the right of an actual settler in good faith on this land on January 1, 1883, was recognized and provided for.    The law creating the Land Board on April 14, 1883 (General Laws 1883, page 106), authorized those who had filed applications to purchase

land prior to February 3, 1883, and whose payments had been tendered and refused, to complete and perfect the purchase of the land authorized to be sold under the Act of April 6, 1881, if suit to set aside the purchase was not brought by the State within twelve months from the passage of that act. Morris, under this act, on February 16, 1884, renewed his tender to the Treasurer, which was received, and subsequently made all payments (aggregating $3264.85) required, and obtained in July, 1885, a patent for the land.

The facts further disclosed by the court's findings are that Slaughter with his family moved on the land in October, 1879, and has lived on it continuously until October, 1885, with the bona fide intention of making it his home. It was not occupied at any time by Morris. On the 21st of November, 1883, appellee Slaughter, as an actual settler in good faith, made application in due form to the School Land Board to purchase the same and made all of the payments required. This application was in compliance with the Act of 1883, authorizing actual settlers thereon, on January 1, 1883, to purchase. Appellee's improvements were found to be worth $1800, the occupation of the land as worth $2000, and the land itself was valued at $3200. Under the foregoing facts appellant claims that the land, being on the market under the Act of 1881, Morris by his application to the surveyor on February 2, 1883, acquired a right (although it was withdrawn from sale on February 3, 1883), which was protected and preserved by the seventh section of the Land Board Act of April 14, 1883, authorizing those who had made application to purchase such land prior to February 3, 1883, etc., to complete their purchase; and that having made the first payment on the land on February 16, 1884, in accordance with the last named act (which payment was succeeded by all others required, and the issuance of a patent in July, 1885), his title is superior.

Appellant's first assignment is that the court erred in admitting the letter of the Commissioner of the Land Office in evidence, and the question is raised whether the Commissioner had the power to withdraw said land from sale. The Act of 1881, under which the land was placed on the market, and under which Morris's application to purchase was made, provides in its third section that a tabulated statement shall be made of the land, showing number°of survey, block, quantity, name of company surveying it, its value, and description, etc.

This section very evidently intended to provide for obtaining a full and correct description of the land. One copy of this statement it requires to be sent to the Commissioner of the General Land Office. The fourth section makes it his duty to examine this description, and if it be made in accordance with the act, and if in his opinion the lands are properly valued, he shall notify the proper surveyor, who is not permitted to entertain a proposition for the purchase of the land until he is so notified. It is fur-

ther provided that if the Commissioner believes or has reason to believe that the valuation is too low, or that a proper description has not been given of the soil, timber, or water, etc., he shall require an additional report, or he may send a competent employe from his office or some other person to visit the land and make a correct report.

It will be at once seen that it was clearly the purpose of this section of the act to authorize the Commissioner and make it his duty to prevent any injury to the State which might result from an incorrect description or improper valuation of the land. The statute would have afforded no protection if the Commissioner could not withdraw the incorrectly described land from market until a correct report was made. It would have been useless to clothe him with the power to have the land examined and a new report made if he was compelled to let the land remain on the market and be sold under the erroneous description, to the injury of the State. Such a sacrifice it was intended to prevent by giving him power to withdraw the land from market if the description was erroneous.

As the law made it the duty of the Commissioner to withdraw the land from market until a correct report describing it had been approved by him, there was no error in admitting the letter in evidence.

From what we have said it follows that this land was not on the market on February 2, 1883, and was therefore not authorized to be sold under the Act of 1881. Such being the case, no right was acquired by Morris under his application of that date.

Concede, however, that the Commissioner was not clothed with the power to withdraw the land from market as above stated, and that Morris' application was valid. On the day after his file this land was by the Act of February 3, 1883, withdrawn from sale (Laws 1883, page 31), and it has been decided more than once that those who had done nothing more than to make an application prior to the act of withdrawal acquired no vested right to purchase. White v. Martin, 66 Texas, 342.

But it is argued that section 7 of the Land Board Act (Laws 1883, page 108), which took effect April 14, 1883, gave appellant's vendor Morris the right to purchase under his application, and that under the authority of that act he made the payment on February 16, 1884, and completed the purchase by making all the necessary subsequent payments, and obtained the patent in July, 1885, and that these facts entitle him to the land. How would that affect the rights of Slaughter?

He with his family occupied the land from October, 1879, to October, 1885, with the bona fide intention of making it his home, and had erected valuable improvements thereon. Consequently at the time of Morris' application to purchase Slaughter was in possession with the intention above stated. But whatever right or equity Slaughter had under the Act of 1881 by reason of his occupancy had not been asserted on February 2, 1883, and had become dormant, and Morris' application, it may be con-

·ceded, was validated by the seventh section of the Land Board Act of April 14, 1883.

But the Act of April 12, 1883, which again provided for the sale of this land, revived the dormant equity of Slaughter by giving the actual settler on the land on January 1, 1883, a preferred right for six months after the land was placed on the market to purchase. This act took effect about the 14th day of July, 1883, and the court found that Slaughter had on the 21st of November, 1883, less than six months after the land was on the market, complied with the Act of April 12, 1883, and as an actual settler perfected his claim to the land and made all payments required.

It was never intended by the acts referred to providing for the disposition of the public domain that the application of·the purchaser should affect the right of the State to grant it to the actual settler. This land was subject to pre-emption by such settler, and the unchanging policy of the State has been not to permit applications to purchase to interfere with the appropriation of the land by the actual settler. White v. Martin, *supra*.

The occupancy and the improvement of the land by appellee Slaughter constituted an equity, which by reason of his neglect or delay under the Act of 1881 became dormant.

But that equity was revived by the Act of 1883. Now it is well settled that such being the case, if the settler perfects his right before the fee has been divested out of the State, his title and claim will be superior to and defeat that of a location or "file" made during his occupancy and at a time when his equity or right was dormant. Jennings v. De Cordova, 20 Texas, 515.

If after Slaughter's equity had been lost under the Act of 1881, and before its revival and restoration by the Act of 1883 the fee had passed out ·of the State and become vested in Morris, Slaughter's occupancy would have availed him nothing. But such is not the case before us.

The Act of May 26, 1873, "An act for the benefit of actual occupants ·of public land," extended the time in which the occupant might make his affidavit and return his field notes to the General Land Office twelve months from its passage. This act was held to revive the dormant equities of pre-emptors who had failed to return affidavit and field notes within the time required by previous laws, and a location of a certificate ·on the land so occupied was held to be invalid as against the pre-emption. Perry v. Coleman, 1 Posey's U. C., 312.

Our opinion briefly stated, under the law applied to the facts in this case, is that Morris acquired no right by virtue of his application or file on February 2, 1883, because the Commissioner of the General Land Office had withdrawn the land from market for alleged "numerous errors" in its description, and notified the surveyor to entertain no proposition to purchase the same, and that this he was authorized to do under the statute.

If he was not so authorized, the land was on the day after Morris' application withdrawn from the market by the law, and he acquired no right thereunder.    White v. Martin, *supra.*

We also think that this application of Morris, on February 2, 1883, was not one of the "files" referred to and intended to be protected by section 7 of the Land Board Act of April 14, 1883, because that act applied to files on land authorized to be sold under the acts of 1879 and 1881; and this was not so authorized to be sold, for the Commissioner had withdrawn it from the market.    Again, the files referred to by the Land Board Act were those made on land withdrawn from the market by the law of February 3, 1883, and not to such as had been previously taken off the market by the act of the Commissioner.

We are further of opinion that if any right was acquired by virtue of Morris' application, and it was recognized and validated by the Land Board Act, still Slaughter's title is superior, because the dormant equity growing out of his occupancy as an actual settler and his improvements under the Act of 1881, and which was lost by his neglect and delay to acquire the land under that act, was revived and restored by the Act of April 12, 1883, under which he perfected his claim at a time (November, 1883) when the fee was still in the State, and this defeated any right which might have attached by reason of Morris' application made when Slaughter's equity was dormant.

It is only necessary to add, in conclusion, that we think there is no error in the judgment and that it should be affirmed.

*Affirmed.*

Adopted October 21, 1890.

Chief Justice Stayton not sitting.