## E. R. Tatum et al. v. R. B. Kincannon.

,Decided March 31, 1909.

**1.—Vendor and Purchaser—Warranty—Title in State.**

One who sold with warranty of title a tract of land, a portion of which was found not to be included within the boundaries of his patent, was liable on his warranty for the proportionate price for so much of the land as was not owned by him, if it still belonged to the State; but if such vendor had, before making sale, made a lawful application to purchase same, entitling him to obtain patent on payment of the price fixed by the State thereon, the vendee, having knowledge of such condition of the title, could recover on the warranty only the sum necessary to be paid in order to perfect his title under such contract of his vendor with the State, and not the price per acre paid by him to the warrantor.

**2.—Public Land—Purchaser.**

Where a purchaser had complied with the terms of the law for sale of public land (Act of July 14, 1879, Rev. Stats. Arts. 4201-4207) neither the act of the Land Commissioner, in refusing to issue patent and return the purchase money paid, nor the subsequent action of the Legislature in repealing the law, deprived him of his right to acquire it.

**3.—School Land—Sale of Public Land.**

Article 7, Section 2 of the Constitution, in setting aside one-half of the public domain for the use of public schools, left the mode of partition to the Legislature; and a law providing for its sale and the appropriation of one-half the proceeds to the schools (Act of July 14, 1879, Rev. Stats. Arts. 4201-4207) sufficiently protected the rights of the school fund secured by the Constitution, and was within the powers of the Legislature. Hogue v. Baker, 92 Texas, 58, followed.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*John W. Davis,* for appellants.—On November 23, 1898, E. R. Tatum applied to Andrew Goddard, county surveyor of McLennan County, for the survey and purchase of the land in question in this case,

and other land adjoining it on the south, under chapter 2, title 87, of the Revised Statutes of Texas, 1895, articles 4201-4206. The survey was made by the surveyor and field notes prepared according as the law required on the 25th of November, 1895, and were immediately forwarded to the land office, and the surveyor was paid his fees, and in November, 1898, the amount required by law to purchase said land was paid to the State Treasurer and received by him, which action on the part of Tatum concluded a contract with the State which even legislation could not affect, and when Tatum sold said land to Kincannon the latter succeeded to the rights of Tatum. When the survey is made and filed and the money paid the treasurer, the State has made an executory contract and the applicant has a vested right which even subsequent legislation can not destroy. White v. Martin, 66 Texas, 340; Jumbo Cattle Co. v. Bacon, 79 Texas, 5; Standifer v. Wilson, 93 Texas, 232; Watts v. Wheeler, 10 Texas Civ. App., 117.

Section 2 of article 7 of the Constitution of 1876 appropriates one-half of the public domain to the public schools, and section 4 of same article contains the following: "The lands herein set apart to the public free school fund shall be sold under such regulations, at such times and on such terms as may be prescribed by law," thus leaving the disposition of such lands with the Legislature, which by Act of July 14, 1879, and acts amendatory thereof, provided for sale of scrap land in organized counties, protecting the school fund to the extent of one-half of the proceeds of such land, as required by the Constitution, which laws were in effect and unrepealed in November, 1898, and May, 1899, and Tatum, having fully complied with said law, had a vested contractual right in the land involved in this controversy. Constitution, art. 7, secs. 2 and 4; Rev. Stats., arts. 4200-7; Galveston, H. & S. A. Ry. Co. v. State, 77 Texas, 367; Swenson v. Taylor, 80 Texas, 584; Brown v. Shiner, 84 Texas, 505; Reed v. Rogan, 94 Texas, 177; Von Rosenberg v. Cuellan, 80 Texas, 255; Schley v. Maddox, 22 S. W., 999; Hogue v. Baker, 92 Texas, 58.

When Kincannon knew Tatum had a contract with the State before he purchased from the State, it was his duty to see that such contract was enforced, and failing to do so, Tatum's warranty could not be extended to cover Kincannon's laches by which he lost the title conveyed to him by Tatum. Horn v. Smith, 79 Texas, 310.

*O. L. Stribling,* for appellees.—The public domain included in articles 4201-4206, Rev. Stats. 1895, having been exhausted at the time appellant had the survey made and presented his application to the land commissioner to purchase the land in controversy, the State could not make a binding contract with the appellants, there being no subject matter for the contract to operate upon. Hogue v. Baker, 92 Texas, 58; Act 1899, p. 310; Act 1903, sec. 9, p. 228; Act 1905, secs. 1 and 8, p. 159; Act 1900, p. 29.

One having an incipient right to land, as a location or survey, or other merely equitable title, not perfected into a grant or vested by deed, may abandon such inchoate right. Tatum by his laches in perfecting his right to the land, if he had any, in law, abandoned the same and would not at this time be entitled to enforce against the State for

himself or another any right acquired under the making of the survey and application in 1898-99. Willoughby v. Townsend, 51 S. W., 335; Chesser v. Baughman, 55 S. W., 133; 22 Texas Civ. App., 435.

Appellee having paid appellants thirty-two and 50-100 dollars per acre for the land in controversy and there being no valuable improvements shown to be upon the same at the time of the attempted sale, and said land being at that time a part of the public land of the State belonging to the public school fund, the appellee had the right to sue and recover judgment against the appellants for the amount he paid them for such land. Lamb v. James, 87 Texas, 490; Rayner Cattle Co. v. Bedford, 91 Texas, 642.

KEY, ASSOCIATE JUSTICE.—R. B. Kincannon brought this action against E. R. Tatum and his wife, Fannie B. Tatum, seeking to recover upon an alleged breach of a contract of warranty of title contained in a deed made by Tatum and his wife to Kincannon. The plaintiff alleged in his petition that 15 43-100 acres of land covered by the deed did not belong to the Tatums at the time they executed the deed referred to, but was public domain belonging to the State of Texas. It was further alleged that plaintiff had conveyed the land to one J. L. Bird and warranted the title to the same, and that Bird, in order to protect himself and prevent eviction, had purchased the land from the State, and that plaintiff had become liable to Bird upon his warranty of title.

The defendants filed an answer embracing numerous matters not necessary to be set out in detail.

There was a jury trial which resulted in a judgment in favor of the plaintiff for $631.66, and the defendants have appealed.

Whether or not the land referred to was vacant public domain at the time in question was the only issue submitted to the jury. If the vacancy did not exist the land belonged to Tatum and there was no breach of his contract of warranty. If the vacancy did exist the land never belonged to Tatum and there was a breach of his warranty, unless he had acquired the superior right to it by the contract of purchase alleged by him; and in the latter event he concedes there will be a breach of his warranty to the extent of the contract price at which he had purchased the land. The trial court submitted the case to the jury upon the question of vacancy only, and refused to submit the question of E. R. Tatum's purchase of the land from the State.

Error is addressed to the action of the court in withdrawing from the jury the question of Tatum's purchase, and in refusing a requested instruction to the effect that the undisputed testimony showed that Tatum had taken the necessary steps in November, 1898, to render him a purchaser of the land from the State at $2 per acre, and therefore in no event could the plaintiff recover otherwise than the amount of unpaid purchase money under that contract. The uncontroverted testimony shows that on November 23, 1898, Tatum applied to the county surveyor of McLennan County, the county in which the land is situated, for the survey and purchase of the land in question. That the survey was made by the county surveyor and the field notes recorded by him November 25, 1898, and immediately forwarded to the

Commissioner of the Land Office, who received them and refused to issue a patent to Tatum, although he had paid to the State Treasurer $2 per acre for the land. Tatum was in possession of the land when he contracted to purchase, delivered possession to Kincannon, and he and his vendee have been in possession ever since.

It was shown that Kincannon advised and assisted Bird, his vendee, in purchasing the land from the State, and that at the time of doing so he had knowledge of the steps which Tatum had taken to purchase the land from the State. In fact Tatum had furnished him with the papers evidencing Tatum's contract for the purchase of the land before anything was done by Kincannon and Bird looking to the purchase of the land by the latter.

In view of these facts we are of the opinion that the court erred in not giving the requested instruction referred to. Under the Act of July 14, 1879, now embraced in the Revised Statutes from articles 4201 to 4207, inclusive, which Act was in force in November, 1898, Tatum had the right to purchase the land at $2 per acre, and the steps taken by him were all that were necessary to render him such purchaser and secure to him paramount title to the land. It is true that after the Commissioner of the Land Office refused to issue a patent to Tatum the State treasurer returned to him the money which he had paid for the land. And it is also true that after that time the Legislature repealed the Act of July 14th, 1879, but neither of those facts destroyed or impaired Tatum's right to the land. (White v. Martin, 66 Texas, 340; Jumbo Cattle Co. v. Bacon, 79 Texas, 5; Standifer v. Wilson, 93 Texas, 232.)

Counsel for appellee contends that we should take judicial knowledge of the facts which were proved in Hogue v. Baker, 92 Texas, 58, to the effect that the State school fund had not received its one-half of the public domain secured to it by the Constitution, and should therefore hold that the land in question was not subject to sale under any law then existing. If it be conceded that the courts will take judicial knowledge of the facts referred to, still the opinion of the court in Hogue v. Baker is against appellee, and supports the proposition urged by appellant. It was there held that section 2 of article 7 of the Constitution, in making one-half of the public domain a part of the school fund, left the mode of partition, except as to alternate certificates granted to corporations, etc., wholly to legislative control, and did not contemplate a division as a whole; and that the segregation could be accomplished under legislative authority by successive divisions in part, or by sales of parcels successively and division of the proceeds, as in the Act of July 14, 1879, for sale of public lands. By section 7 of that Act, which is article 4207 of the Revised Statutes, it is declared, in substance, that one-half of the proceeds of such sale shall go to the permanent free school fund and the other half to the public debt.

Thus it will be seen that the statute referred to preserves to the school fund all that was secured to it by the Constitution, as construed by our Supreme Court in Hogue v. Baker, supra.

Counsel for appellants in submitting the case made the request that if this court sustained his contention as to the validity of Tatum's purchase, and the contention that he could only be held liable in any

cvent for $2 an acre for the land, that this court affirm the judgment
for that amount and finally dispose of the case. In view of that re-
quest, the case will not be remanded for another trial, but the judg-
ment of the trial court will be reformed so as to reduce the amount re-
covered by the plaintiff to $30.86, with interest thereon at the rate of
six percent per annum from March 12, 1904, making a total of $38.01.
The costs of the appeal will be taxed against appellee.

*Reformed and affirmed.*