FRANKS et al. v. KROHN et al.

No. 4010.

Court of Civil Appeals of Texas. Beaumont.
June 25, 1942.

Rehearing Denied Sept. 9, 1942.

Ike D. White, H. Grady Chandler, White, Taylor & Chandler, and E. Cartledge, all of Austin, Gerald C. Mann, Atty. Gen., and Glenn R. Lewis and Fagan Dickson, Asst. Attys. Gen., for appellants.

Baker, Botts, Andrews & Wharton, Hugh M. Patterson, Wm. N. Bonner, and I. M. Williford, all of Houston, Ben W. Tipton, of Electra, W. H. Sanford and Conan Cantwell, both of Dallas, Pitts & Liles, of Conroe, and Vinson, Elkins, Weems & Francis, of Houston, for appellees.

WALKER, Chief Justice.

Appellant, J. E. Franks, filed his original petition in this suit in the district court of Montgomery county on the 23rd day of July, 1940, naming as defendants P. G. Krohn, Tide Water Associated Oil Company, Normandie Oil Corporation, Guardian Trust Company, Mae Frankel, L. M. Josey, and Betty Ann Moran, hereinafter referred to as appellees. He filed his first amended original petition on the 26th day of September, 1940, identical with his original petition except he made certain additional parties defendants, whose names are immaterial to the points presented by the appeal.

For cause of action, appellant plead as follows: (1) that he brought his suit under authority of House Bill No. 9, being Chapter 3, Title "Lands Public", page 465, et seq. of the Acts of the Regular Session of the 46th Legislature of the State of Texas, and particularly subsection (i) and subsection (j) of Section 1 of said Act, Vernon's Ann.Civ.St. art. 5421c, § 6 (i, j), and for the purpose of litigating the question of the existence of a vacant unsurveyed area of land, as hereinafter described, and also to establish the preference rights of appellant in and to said land, and for the recovery of damages as hereinafter set out; (2) that the State of Texas was and is the owner in fee simple of two tracts of land in Montgomery County, described by metes and bounds and called "First Tract" and "Second Tract," and is entitled to the possession thereof subject to his rights, and that appellees unlawfully entered upon and dispossessed the State of Texas and him, and now withhold from them the possession of said premises; (3) that said tracts of land constitute an unsurveyed area of school land belonging to the State of Texas; (4) that on or about May 25, 1932, he discovered an unsurveyed area of school land in Montgomery County bounded on the North by the Charles B. Stewart Survey, on the East by the E. P. Brown Survey, on the South by the W. C. C. Lynch Survey, and on the West by the Stephen H. Bryan Survey, and on said date "acting under and by virtue of the second paragraph of Section 8, Chapter 271 of the Acts of the Regular Session of the 42nd Legislature," he applied to the County Surveyor to have the land surveyed with a view to obtaining a mineral lease from the State; that on July 2, 1932, said area was surveyed by the Deputy Surveyor of said County, whose field notes were approved by the County Surveyor, and filed in the Land Office on July 8, 1932; that corrected field notes made by a Licensed Land Surveyor in March and April, 1933, were filed in the Land Office on April 14, 1933, and covered the area described as "First Tract"; (5) that on or about February 20, 1933, he discovered another unsurveyed area of school land in said county "bounded on the North by a tract of 52.87 acres surveyed for J. E. Franks as State School Land on July 2, 1932, bounded on the East and South by the W. C. C. Lynch Survey," and on or about said date he applied to the County Surveyor for a survey thereof with a view to obtaining a mineral lease from the State, and on or about April 13, 1933, said area was surveyed by a Licensed State Land Surveyor whose field notes were filed in the Land Office on April 14, 1933, and cover the area described as "Second Tract"; (6) that by virtue of said applications, surveys and filings, he secured a preference right to purchase a mineral lease from the State on each of said tracts at the minimum price fixed by the Land Commissioner; that on June 19, 1940, the Land Commissioner "rejected and refused to grant said applications" and so notified the plaintiff; (7) that such rejection by the Land

Commissioner was because he was of the opinion that the land was not vacant, unsurveyed school land; but he alleged that said tracts were in fact unsurveyed areas of school land and that by virtue of the applications, surveys, and filings aforesaid, his preference rights to purchase mineral leases thereon were effective as of the respective dates of his filings in the Land Office; (8) that he has been unable to convince the Land Commissioner that said land is vacant, unsurveyed school land belonging to the Public Free School Fund of Texas, although he has from time to time attempted to do so, and that he is aggrieved at the act of the Land Commissioner in rejecting his applications; that the Land Commissioner not having fixed any minimum price "it has been impossible for him to offer the Land Commissioner any price for the lease thereon as he does not know the amount to offer, since the price to be offered had to be determined by the Land Commissioner," but he has been and is ready and willing to pay the minimum price when fixed by the proper authority; (9) that he is entitled to a decree that the land is vacant, unsurveyed land, and is also entitled to a preference right to purchase mineral leases thereon by paying to the Land Commissioner for the use and benefit of the Public Free School Fund the amount adjudged by the court to be paid for said leases "and that the decree of the court adjudging said leases to plaintiff shall have the same force and effect as if granted and issued by the Land Commissioner"; that since the Land Commissioner has failed to fix a minimum price "plaintiff is entitled to a decree of this court fixing a minimum price for said leases," and in this connection he alleged that it is contemplated and customary that a discoverer of a vacant, unsurveyed area of school land is entitled to purchase a mineral lease at a nominal amount per acre as a bonus plus one-eighth royalty to the State, and that such nominal value as a bonus shall not be in excess of the minimum price provided by law for the sale of the surface of the land by the State which was $1.00 per acre at the time of his filings in the Land Office and $2.00 per acre at the time of the filing of the suit, and he alleged that he was entitled to mineral leases on said land for $1.00 per acre, and in no event more than $2.00 per acre; (10) in the event he was not entitled to a decree fixing the minimum price at which he may purchase mineral leases, he nevertheless claimed to be entitled to a preference right to purchase such leases at the minimum price fixed by the Land Commissioner or by the School Land Board, or by both; (11) that appellees claim some right, title and interest in the two tracts of land described, the exact nature of which is unknown to him, but is inferior to his rights and the rights of the State; said land is owned in fee simple by the State of Texas subject to his preference right to purchase mineral leases thereon; (12) that said lands lie within a proven oil producing area "and are extremely valuable for oil and gas purposes and are now and have been for a number of years producing oil and gas in paying quantities"; he plead that he had been the owner of the oil and gas produced from said tracts since July 8, 1932, as to the first tract, and since April 14, 1933, as to the second tract, and that appellees had produced and converted oil from said tracts to the value of more than $200,000.00, for which they had failed and refused to account to him or to the State of Texas and "the plaintiff and the State of Texas are entitled to and do here demand a strict accounting thereof"; (13) that he did not know the exact amount and value of the oil and gas taken by each of the appellees and demanded of them that they file statements in writing and under oath, stating the facts in that connection; (14) that appellees are still continuing to take oil and gas from said land and are refusing to account to him or the State therefor "all to the irreparable damage and injury of the plaintiff and the State of Texas"; that since he was entitled to mineral leases on said tracts, dating from July 8, 1932, as to the first tract, and from April 14, 1933, as to the second tract, he was entitled to recover from the appellees seven-eighths of the oil produced from said respective dates, conditioned that he pay to the Land Commissioner the amount to be adjudged as the minimum price for the leases; (15) that a certified copy of this petition should be served on the Attorney General and upon the Commissioner of the General Land Office.

Appellant's prayer was: (1) that notices, accompanied by certified copies of the petition, be prepared and served upon the Attorney General and the Land Commissioner; (2) that appellees be ordered to file statements under oath containing information as to oil produced, or that the court appoint auditors; (3) that the appellees be cited to appear and answer and that he have judgment decreeing that said land

is vacant, unsurveyed school land and that the State of Texas has title to and is entitled to the possession thereof subject to his rights, and that he is entitled to a preference right to purchase mineral leases; that "by said decree he have mineral leases" conditioned upon payment to the Land Commissioner of the consideration, decreed by the court to be paid therefor, or in the alternative, that the minimum price be fixed by the Land Commissioner or the School Land Board; that he have judgment for the proceeds of oil produced and vesting title in him to the mineral leases and mineral estate in said land "conditioned upon a showing to the Clerk of this Court that plaintiff has paid or tendered to the Commissioner of the General Land Office the consideration decreed by the court for said leases"; that appellees be enjoined from interfering with his possession, and for costs and general relief.

Appellees answered appellant's petition by general demurrers and by special exceptions to the following effect: (1) That the facts alleged in the petition disclosed that appellant had no cause of action against appellees, his cause of action, if any, being against the Land Commissioner or the School Land Board, neither of which was a party; (2) That appellant was without authority to sue for, on behalf of, or in the name of the State of Texas; (3) That the court had no power to fix or determine the purchase price or "bonus per acre" to be paid by an applicant for a mineral lease on vacant land, nor to select and determine the terms and provisions of a mineral lease; (4) That Chapter 3 of the Acts of the 46th Legislature (1939) under which appellant sued, afforded no basis for the suit, since by its express terms it was inapplicable to an application filed, as was appellant under the prior (1931) Act, Vernon's Ann.Civ.St. art. 5421c, § 1 et seq.; and (4) That, as to appellant's claim for value of oil produced, the facts alleged showed that if any such claim existed, it was owned by the State of Texas and that appellant had no cause of action against appellees therefor.

On the 5th day of November, 1940, the State of Texas, through its attorney general, filed its plea of intervention in appellant's suit against appellees. Intervenor demurred generally to appellant's petition. For cause of action in its own behalf, intervenor alleged that it was the owner in fee simple of the two tracts of land described in appellant's petition; that said land was adversely held by appellees; that said land was in a proven oil and gas producing area extremely valuable for oil and gas, and was producing oil and gas in large amounts; that appellees had drilled oil and gas wells and produced approximately one million barrels of oil and a great quantity of gas, of the reasonable value of $1,000,-000, and were still producing oil and gas, claiming title thereto, and to said land; that intervenor had no way of knowing the exact amount of oil and gas so taken, and asked that appellees be required to file statements under oath setting out the facts with reference thereto. The prayer was that appellees be required to file statement of the oil produced by them and on final hearing that intervenor have judgment against appellant and all of the appellees for title and possession of the land, together with damages and rents, costs and general relief.

Appellant by way of answer to said intervention filed a general denial and plea of not guilty, and a special answer admitting that the State of Texas had title to the land involved in this suit "which title is subject to the right of this plaintiff to a preference right to purchase a mineral lease on said land from the State of Texas," and also admitting that the State was entitled to recover from appellees the value of the oil produced by the appellees "subject to the rights of this plaintiff to seven-eighths of the value of the oil produced"; and praying that "the State of Texas recover the title and possession of the land involved in this suit" subject to the appellant's preference right to purchase a mineral lease and his right to share in the recovery of the value of the oil produced.

The several appellees specially excepted to the State's petition in intervention on the grounds: (1) that House Bill No. 9, Acts of the 46th Legislature (1939), Section 1, Subsection (j), pursuant to which said petition in intervention is purported to have been filed, had no application to this suit; (2) that since appellant presented no justiciable controversy of which the court had jurisdiction, nor any cause of action upon which appellant was entitled to any relief, it did not constitute a pending suit wherein the State could properly intervene.

On the 12th day of December, 1941, all parties being present by their respective

attorneys, the court heard the case on the exceptions, motions, and dilatory matters presented by the pleadings, and sustained appellees' exceptions to appellant's petition, and to intervenor's plea of intervention, and on their refusal to amend, the court dismissed appellant's suit and intervenor's plea of intervention; appellant and the State have regularly prosecuted their appeals.

There was no trial on the merits. All issues presented by the parties arise on the face of the pleadings.

### Opinion.

■■ On the ruling of the court, sustaining appellees' exceptions to appellant's petition and dismissing his suit, the sole question presented by this appeal, between appellant and appellees, is his right to file and prosecute this suit; on this point all facts alleged in appellant's petition must be accepted as true. So, we must assume that appellant's applications for leases on the land described in his petition were in all respects valid, and that, as and when he filed these applications, he had a contractual right with the State to the leases, and that the land was vacant, unsurveyed public land. On these conclusions, appellant had a vested right to the leases, if and when the land in issue should be declared vacant land, whether by the ruling of the Commissioner of the general land office or by court decree. White v. Martin, 66 Tex. 340, 17 S.W. 727; Jumbo Cattle Co. v. Bacon, 79 Tex. 5, 14 S.W. 840; State v. Robison, 119 Tex. 302, 30 S.W.2d 292; Tatum v. Kincannon, 54 Tex.Civ.App. 633, 19 S.W. 113; Caples v. Cole, 129 Tex. 370, 102 S.W. 2d 173, 104 S.W.2d 3.

■ Two jurisdictions had the power to decree the land vacant, so as to make active appellant's right to the leases: (a) the Commissioner of the general land office, who had ruled that the land was not vacant; (b) the courts, but under the law in effect on the date appellant filed his application he did not have the right of court action on his application. In United Production Corp. v. Hughes, 137 Tex. 21, 152 S.W.2d 327, our Supreme Court held that the vacancy act of 1931, Vernon's Ann.Civ. St. art. 5421c § 1 et seq., under which appellant filed his application, did not authorize an applicant, whose application had been refused by the Commissioner of the general land office to institute and prosecute a suit to have the land in controversy

decreed to be vacant land. But in that case our Supreme Court said nothing impairing the applicant's right, vested in him on authority of the cases cited above. This claim was outstanding, and a cloud on the title of all subsequent claimants of the land.

This vested right of the claimant was recognized by the Legislature by § 3 of the Vacancy Act of 1939, supra, Vernon's Ann.Civ.St. art. 5421c, § 6 note:

Sec. 3. "Nothing in this Act shall affect or apply to filings or applications which are involved in pending litigation upon the effective date hereof, nor to the title to the land involved in any suit to which the State is now a party, nor to any pending suit. Nothing in this Act shall apply to any application on file at the effective date of this Act, and such applications may be prosecuted under the law in effect at the date such applications were originally filed, except that suit thereon shall be filed (if not already filed) within the time limits fixed in subsection (i) hereof."

This Section 3 of the Act of 1939 did not, in law, reserve any right to appellant, nor vest in him any rights; his rights under his applications had become vested by force of the vacancy act of 1931; § 3 of the 1939 Act simply recognized his vested right, as a basis for the affirmative legislation, evidenced by other sections of the Act.

The 1939 Vacancy Act was also in clear recognition of the cloud cast by the vested right of the claimants on the title of vacant unsurveyed public land. Though the Legislature could not forfeit these rights by a legislative act, it did have the power to fix a time limit in which the claimant could and must have the vacancy issue judicially determined. Appellant construed the 1939 act as remedial and as giving him the power to file the suit, denied him under the 1931 act. On this theory of the Act, he filed his suit in due time, but as stated above, his right to maintain the suit was challenged by appellees, and the challenge sustained.

Since the legislature did not have the power to abrogate appellant's vested rights, the whole intent of the Act to free vacant lands of the vested rights of existing claimants is nullified unless appellant has the right to prosecute this suit to judgment. To effectuate the legislative intent, the language of the 1939 Vacancy Act should be construed in support of his right to main-

tain this suit, if it is reasonably susceptible of this construction.

Section 3, supra, of the 1939 vacancy Act provides that the provisions of the Act shall not apply to the applications on file at the time of its effective date, including appellant's applications, but this section expressly provides that applications, including appellant's applications, may be prosecuted under the law in effect on the date they were originally filed. On authority of United Production Corp. v. Hughes, supra, this right to prosecute did not include the right to file this suit. So this language merely authorized the applicants to do those things they had the right to do under the Acts in force when they filed their applications. Under this construction of § 3, no provision of the 1939 Act related to appellant's applications except subsection (i), and subsection (j) by necessary implication. The language of Section 3 on this point is as follows:

"Nothing in this Act shall apply to any application on file at the effective date of this Act, and such applications may be prosecuted under the law in effect at the date such applications were originally filed, except that suit thereon shall be filed (if not already filed) within the time limits fixed in subsection (i) hereof."

We give subsections (i) and (j):

"(i) Any application made under prior laws to purchase or lease unsurveyed school land which is on file in the office of the Commissioner or with any county surveyor and which has not been granted upon the effective date of this Act, shall become null, void, and of no further effect unless there is then pending a suit, or suits, involving the question of whether the land so affected or a part thereof is vacant, or unless the Commissioner shall within nine (9) months after the effective date hereof grant said application, or unless the applicant shall within sixty (60) days after the end of such nine-months period, file an action in the District Court, for the purpose of litigating the question of the existence of a vacant unsurveyed area.

"(j) Any person, firm, or corporation aggrieved by any action taken by the Commissioner under the provisions of this Act, or with reference to any application to purchase or lease vacancies, may institute suit in the District Court of the county where any part of the land is situated, but not elsewhere, and there try the issues of boundary, title, and ownership of any al-

leged vacancy involved, as well as the issues of the preference rights of such person, firm, or corporation, as herein provided. The plaintiff in such suit shall within thirty (30) days after the filing thereof cause a certified copy of the original petition therein to be served by any sheriff or constable of Travis County upon the Attorney General of Texas and the Commissioner, and cause such officer's return showing said service to be filed with the papers in said cause. Whether the Attorney General answers or intervenes in said cause or institutes suit in the first instance, following the filing of such application, the venue of all such suits shall be in the county where such land, or any part thereof, is located. When such litigation shall have been prosecuted to a final judgment, said judgment shall be binding upon the State of Texas. It shall be mandatory for the Attorney General to intervene in behalf of the State in such cases."

The provisions of this section relating to applications which had been granted, applications where suit was pending involving the issue of whether the land was vacant, and applications which the Commissioner shall have granted within nine months from the effective date of the Act have no application to appellant's right to prosecute this suit, for the reason that none of these facts exists in his case. Appellant would support his suit by the following language of subsection (i), "unless the applicant shall within sixty (60) days after the end of such nine-months period, file an action in the District Court, for the purpose of litigating the question of the existence of a vacant unsurveyed area."

It is our conclusion that Section 3 and subsection (i) construed together clearly give appellant the right to institute this suit to determine the issue of vacancy as it relates to the land in controversy. As said above, appellant had a vested right in this land if it is vacant, unsurveyed land. Under the Act of 1931 he could not invoke the aid of the courts to adjudicate his right, and the Commissioner of the general land office had ruled against his claim of vacancy. In no other way could the State and the other claimants, against his will, free this land of his claim, except by an independent action by the State, which the State had not filed.

While Section 3 and subsection (i) did not in affirmative language give appellant

the right to institute this suit, these sections of the Act expressly recognized his right to sue, and decreed a forfeiture of his right, if within the time prescribed, he failed to file the suit. As said above, he filed this suit within the time allowed by the Act, and therefore the court erred in dismissing this case.

Appellant's petition was not bad for his failure to make the Land Commissioner or the School Board parties. The clear purpose of appellant's petition was to litigate "the question of the existence of a vacant unsurveyed area," as authorized by subsection (i), supra. He plead facts giving him a vested right in the land in controversy, and made appellees parties defendant on allegations that they were asserting claims adverse to his vested interest. Appellant's suit, authorized by subsection (i), was within the grant of subsection (j), supra. Subsection (j) does not require the claimant to make the Commissioner of the land office, or any other state officer or agent, a party defendant, but does provide a method whereby the State can be made such a party that the final judgment on the issues authorized by the Act will be binding on the State. In all these respects appellant complied with the provisions of subsection (j). Since appellant's suit was authorized by subsections (i) and (j), the judgment on the issues authorized by these subsections will be binding on all parties to this suit; if in favor of appellant the judgment will decree that the land in controversy is vacant unsurveyed public school land. If, as against such a judgment the Commissioner should refuse to declare the land vacant appellant would have his legal remedy against him by mandamus before the Supreme Court. What we have said on this point is in recognition of all that was ruled by our Supreme Court in United Production Corp. v. Hughes, supra. The issues in that case did not arise under the 1939 Vacancy Act, and the rights of the parties and the issues of the cause of action were defined only as they related to the Vacancy Act of 1931, which did not create in the applicant a justiciable right to maintain a suit "for the purpose of litigating the question of the existence of a vacant unsurveyed area" as authorized by subsection (i) of the 1939 Act.

The plea of intervention by the State was in the nature of an action of trespass to try title, with the State as plaintiff, against appellant and appellees, as defendants. The court entered the following order of dismissal against the state:

"The court further finds that the intervention of the State of Texas in this cause should be denied and dismissed as prayed for the defendants, T. G. Krohn, Tidewater Associated Oil Company, Normandy Oil Corporation, Mae Frankel, L. M. Josey, Guardian Trust Company and Betty Ann Moran, for the reason that there being no controversy between plaintiff and the defendants justiciable in this court under the pleadings in this cause, there is no controversy in which the State of Texas should be allowed to intervene, and for the further reason that the plea of intervention of the State of Texas shows on its face that the right to intervene is predicated upon an act of the 46th Legislature of Texas, which Act the court finds to have no application to the proceedings;

"It is therefore, ordered, adjudged and decreed that this cause and the said intervention of the State of Texas be dismissed. * * *"

On our conclusion that appellant had the right to prosecute his suit and that the court erred in dismissing it, the basic fact supporting the order of dismissal against the State fails and the State had the right to intervene under the provisions of subsection (j), supra.

But the right of the State to maintain and prosecute its plea of intervention in the nature of an action in trespass to try title was in no way dependent on appellant's right to prosecute this suit. In aid of its action in trespass to try title the State was not required to invoke one single element of appellant's cause of action. So, when appellant's petition was struck from the record, the State was not deprived of a single supporting fact. All the facts necessary to support its plea of intervention are found in its petition of intervention. Vernon's Ann.Civ.St. art. 5420, the State had the right, and it was the duty of the attorney general, to institute this suit. That the suit was instituted by the attorney general by intervening in appellant's cause of action is wholly immaterial. In support of this contention, we quote as follows from the opinion of Judge Brown, writing for our Supreme Court in M. H. Lauchheimer & Sons v. Coop, 99 Tex. 386, 89 S. W. 1061, 1063, 90 S.W. 1098:

"The cause of action which Coop asserted against Lauchheimer & Sons and Saun-

ders was independent of the controversy between Saunders and Lauchheimer & Sons, and might have been asserted in a separate suit. The intervention was an independent suit to that extent that if Saunders, the plaintiff in the original suit, had dismissed his case, the intervention would have stood upon the docket as a case to be tried between Coop and the defendants therein. State v. [Farmers'] Loan & Trust Co., 81 Tex. [530], 546, 17 S.W. 60. For convenience, our liberal practice permits intervention by one who claims the subject of the controversy adversely to both parties to a suit. If, however, the causes of action are distinct, the judgments will be distinct and independent each of the other."

See, also, State of Texas v. Farmers' Loan & Trust Co., 81 Tex. 530, 17 S.W. 60; State of Texas v. John S. Kennedy, et al., 17 S.W. 82.

It follows that the judgment of the lower court should be reversed and the cause remanded for a new trial, and it is accordingly so ordered.